# In the United States Court of Appeals for the Sixth Circuit

---

NATHAN ROBERTS AND FREEDOM TRUCK DISPATCH LLC, ON BEHALF
OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,

*Plaintiffs-Appellants*,

v.

PROGRESSIVE PREFERRED INSURANCE COMPANY; PROGRESSIVE
CASUALTY INSURANCE COMPANY; CIRCULAR BOARD INC.,
ORIGINALLY NAMED AS CIRCULAR BOARD, LLC

*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the Northern District of Ohio, Eastern Division
Case No. 1:23-cv-01597-PAG

---

## OPENING BRIEF FOR APPELLANTS

---

JOSEPH P. ASHBROOK
JULIE E. BYRNE
BENJAMIN M. FLOWERS
Ashbrook Byrne Kresge LLC
Post Office Box 8248
Cincinnati, Ohio 45249
(513) 582-7424 (phone)
(513) 216-9882 (fax)
jpashbrook@ashbrookbk.com
jebyrne@ashbrookbk.com
bflowers@ashbrookbk.com

JONATHAN F. MITCHELL
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

GENE P. HAMILTON
NICHOLAS R. BARRY
America First Legal Foundation
611 Pennsylvania Avenue SE #231
Washington, DC 20003
(202) 964-3721 (phone)
gene.hamilton@aflegal.org
nicholas.barry@aflegal.org

*Counsel for Appellants*

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 24-3454      Case Name: Roberts v. Progressive Preferred Ins. Co

Name of counsel: Jonathan F. Mitchell

Pursuant to 6th Cir. R. 26.1, Nathan Roberts

*Name of Party*

makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

   No.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

   No.

---

## CERTIFICATE OF SERVICE

I certify that on _____ August 19, 2024 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Jonathan F. Mitchell
Counsel for Appellants Nathan Roberts
and Freedom Truck Dispatch LLC

---

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: 24-3454       Case Name: Roberts v. Progressive Preferred Ins. Co

Name of counsel: Jonathan F. Mitchell

Pursuant to 6th Cir. R. 26.1, Freedom Truck Dispatch LLC
*Name of Party*

makes the following disclosure:

1.      Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No.

2.      Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> No.

---

CERTIFICATE OF SERVICE

I certify that on _____ August 19, 2024 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

         s/ Jonathan F. Mitchell
         Counsel for Appellants Nathan Roberts
         and Freedom Truck Dispatch LLC

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

# TABLE OF CONTENTS

Disclosure statement (Nathan Roberts) ................................................................. i

Disclosure statement (Freedom Truck Dispatch LLC) ........................................ ii

Table of contents ................................................................................................... iii

Table of authorities .............................................................................................. iv

Statement regarding oral argument ................................................................... vi

Statement of jurisdiction ....................................................................................... 2

Statement of the issues ......................................................................................... 2

Standard of review ................................................................................................. 3

Statement of the case ............................................................................................ 3

    I.     Progressive's "Driving Small Business Forward" fund ..................... 3

    II.    Plaintiffs Nathan Roberts and Freedom Truck Dispatch .................... 7

    III.   Procedural history ................................................................................. 8

Summary of the argument .................................................................................... 12

Argument ............................................................................................................... 14

    I.     The district court erred by dismissing the plaintiffs' damages claims for failure to allege Article III injury ....................................... 14

    II.    The district court erred by dismissing the plaintiffs' damages claims for failure to allege redressability ............................................ 21

    III.   The district court erred by entering judgment for the defendants after concluding that it lacked subject-matter jurisdiction over the controversy ....................................................... 23

Conclusion ............................................................................................................. 26

Certificate of compliance ..................................................................................... 27

Certificate of service ............................................................................................ 28

Addendum ..............................................................................................................

# TABLE OF AUTHORITIES

**Cases**

*Adarand Constructors, Inc. v. Pena*, 515 U.S. 200 (1995) ........................................... 20

*Aiken v. Hackett*, 281 F.3d 516 (6th Cir. 2002) .................................... 1, 12, 14, 20, 21

*American Reliable Insurance Co. v. United States*,
106 F.4th 498 (6th Cir. 2024) ................................................................ 3

*Chapman v. First Index, Inc.*, 796 F.3d 783 (7th Cir. 2015) ....................................... 24

*Federal Election Commission v. Ted Cruz for Senate*, 596 U.S. 289 (2022) ........... 13, 22

*Frederiksen v. City of Lockport*, 384 F.3d 437 (7th Cir. 2004) ................................... 25

*Himmelreich v. Federal Bureau of Prisons*, 766 F.3d 576 (6th Cir. 2014) ......... 13–14, 24

*Intera Corp. v. Henderson*, 428 F.3d 605 (6th Cir. 2005) .......................................... 25

*Manhattan Community Access Corp. v. Halleck*, 587 U.S. 802 (2019) ......................... 3

*Michigan Surgery Investment, LLC v. Arman*,
627 F.3d 572 (6th Cir. 2010) ................................................................ 25

*Pettrey v. Enterprise Title Agency, Inc.*, 584 F.3d 701 (6th Cir. 2009) ........................ 24

*Pratt v. Ventas, Inc.*, 365 F.3d 514 (6th Cir. 2004) .................................................... 25

*State ex rel. Tennessee General Assembly v. United States*,
931 F.3d 499 (6th Cir. 2019) ................................................................ 24

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998) ....................... 13, 24

*Texas v. Lesage*, 528 U.S. 18 (1999) ...................................................................... 15

*United States v. Students Challenging Regulatory Agency Procedures
(SCRAP)*, 412 U.S. 669 (1973) .............................................................. 15

*Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021) ................................................ 13, 22

*Wooden v. Board of Regents of University System of Georgia*,
247 F.3d 1262 (11th Cir. 2001) .............................................................. 15

**Statutes**

28 U.S.C. § 1291 ..................................................................................................... 2

28 U.S.C. § 1331 ..................................................................................................... 2

iv

28 U.S.C. § 1343.............................................................................2

42 U.S.C. § 1981....................................................1, 8, 12, 14, 17

**Rules**

6 Cir. R. 32.1(b) ...........................................................................15

Fed. R. Civ. P. 12(h)(3) ...............................................................24

## STATEMENT REGARDING ORAL ARGUMENT

Appellants Nathan Roberts and Freedom Truck Dispatch LLC respectfully request oral argument, as the issues in this case are sufficiently important and complex to warrant argument time.

In the Sixth Circuit, a plaintiff who sues under 42 U.S.C. § 1981 lacks Article III standing to seek damages unless he would have obtained the sought-after contract in the absence of racial discrimination. *See Aiken v. Hackett*, 281 F.3d 516, 519 (6th Cir. 2002). Progressive offered $25,000 grants to its customers but limited eligibility for these grants to black-owned businesses. The plaintiffs sued and alleged that Progressive had violated 42 U.S.C. § 1981 by excluding non-blacks from entering *two* different types of contracts: An application-stage contract that is formed at the moment a person submits his completed application to Progressive, and a separate contract at the grant-awarding stage that obligates the recipient to use the $25,000 in grant money to purchase a qualifying commercial vehicle. *See* First Amended Complaint ¶ 32, R. 32, Page ID # 267.

The district court dismissed the damages claims for lack of Article III standing because the plaintiffs did not allege that they would have ultimately obtained one of the $25,000 grants in the absence of the racial exclusion. *See* Memorandum of Opinion and Order, R. 51, Page ID # 617–620. But the plaintiffs *did* allege that they would have obtained and entered into the ancillary contract that gets formed at the *application* stage had Progressive not limited its grants to black-owned businesses. *See* First Amended Complaint ¶ 28, R. 32, Page ID # 267 ("[Mr. Roberts] closed the application and did not apply because he is white and his business is white-owned."); First Amended Complaint ¶ 31, R. 32, Page ID # 267 ("Mr. Roberts's business, Freedom Truck Dispatch, satisfied all of the purported eligibility requirements except

1

for the requirement that the applicant be a black-owned business."). The plaintiffs therefore alleged a past injury sufficient to support Article III standing, and the district court erred by dismissing the plaintiffs' damages claims for failure to allege Article III injury.

## STATEMENT OF JURISDICTION

The district court's jurisdiction rests on 28 U.S.C. § 1331 and 28 U.S.C. § 1343 because the case arises under federal civil-rights statutes. The appellate jurisdiction of this Court rests on 28 U.S.C. § 1291 because the plaintiffs are appealing a final judgment. *See* Judgment, R. 52, Page ID # 626. The district court entered its judgment on May 21, 2024, and the plaintiffs filed their notice of appeal on May 23, 2024. *See* Notice of Appeal, R. 53, Page ID # 627.

The appeal is from an order and final judgment that adjudicated all of the claims with respect to all parties, and no parties or issues remain in the district court.

## STATEMENT OF THE ISSUES

1. Did the district court err by holding that the plaintiffs had failed to allege an injury in fact sufficient to support their claims for damages?

2. Did the district court err by dismissing the plaintiffs' damages claims for failure to allege redressability?

3. Did the district court err by entering "judgment" for the defendants after dismissing the plaintiffs' claims for lack of subject-matter jurisdiction?

## STANDARD OF REVIEW

The district court's decision to grant the defendants' Rule 12(b)(1) motions is reviewed de novo. *See American Reliable Insurance Co. v. United States*, 106 F.4th 498, 504 (6th Cir. 2024) ("We review de novo the district court's ruling on a Rule 12(b)(1) motion to dismiss.").

## STATEMENT OF THE CASE

Because the proceedings in this case are still at the motion-to-dismiss stage, a court must assume the truth of the plaintiff's factual allegations. *See Manhattan Community Access Corp. v. Halleck*, 587 U.S. 802, 806 (2019) ("Because this case comes to us on a motion to dismiss, we accept the allegations in the complaint as true."). We will therefore recite the facts as alleged in the first amended complaint, which must be assumed true for purposes of this appeal. *See* First Amended Complaint, R. 32, Page ID # 262–321; Memorandum of Opinion and Order, R. 51, Page ID # 610 ("For purposes of ruling on the pending motions, all well-plead factual allegations in Plaintiffs' First Amended Class-Action Complaint ('Amended Complaint') (Doc. 32) are presumed true.").

## I.   PROGRESSIVE'S "DRIVING SMALL BUSINESS FORWARD" FUND

Progressive Preferred Insurance Company provides commercial insurance coverage to delivery trucking companies.[1] Plaintiff Nathan Roberts, as sole owner and member of Freedom Truck Dispatch LLC, obtained a com-

---

1.   First Amended Complaint ¶ 9, R. 32, Page ID # 264.

mercial policy from Progressive Preferred Insurance Company on October 17, 2022.[2]

On May 24, 2023, Progressive Preferred Insurance Company e-mailed Mr. Roberts about a grant opportunity for its commercial-trucking small-business owners.[3] The grant was offered through defendant Progressive Casualty Insurance Company, although the e-mail was sent by Progressive Preferred Insurance Company.[4] For simplicity and ease of exposition, we will refer to these defendants collectively as "Progressive."

Progressive announced that only black-owned businesses would be eligible for these $25,000 grants. The email states:

### Progressive Driving Small Business Forward Fund

> We're offering 10 grants of $25,000 each to Black-owned small businesses to use toward the purchase of a commercial vehicle. Apply to this fund today.[5]

Hello Alice, an online resource platform operated by defendant Circular Board Inc., partnered with Progressive in establishing and administering this grantmaking program.[6] Progressive provides the funding for these grants,

---

2. First Amended Complaint ¶ 10, R. 32, Page ID # 264.

3. First Amended Complaint ¶ 11, R. 32, Page ID # 264; First Amended Complaint Ex. 1, R. 32-1, Page ID # 273–275.

4. First Amended Complaint ¶ 11, R. 32, Page ID # 264.

5. First Amended Complaint ¶ 12, R. 32, Page ID # 264; First Amended Complaint Ex. 1, R. 32-1, Page ID # 274.

6. First Amended Complaint ¶ 14, R. 32, Page ID # 264; First Amended Complaint Ex. 3, R. 32-3, Page ID # 279–285; First Amended Complaint Ex. 4, R. 32-4, Page ID # 287–292.

while Hello Alice administers the program and distributes the funds in concert with Progressive.[7]

Any business interested in receiving one of these $25,000 grants was required to complete and submit an application.[8] Progressive announced that any applicant for these grants must:

- Be a for-profit business that is "majority (51%+) owned and operated by a Black-identifying entrepreneur(s)";

- Have 10 or fewer employees and less than $5 million in annual gross revenue;

- Have a demonstrated need for a qualifying commercial vehicle and a clear plan for growth as a result of this vehicle purchase; and

- Not be an independent contractor whose primary business is for a rideshare service such as Uber or Lyft, or third-party food delivery such as UberEats, DoorDash, PostMates, Grubhub, Instacart, etc.[9]

Progressive also announced that heavy trucks and vehicles designed for use off public roads (such as bulldozers, farm machinery, and forklifts) would not count as qualifying commercial vehicles for its grant program.[10] Yet the only criterion that Progressive and Hello Alice actually enforced was the black-

---

7.  First Amended Complaint ¶ 16, R. 32, Page ID # 265.
8.  First Amended Complaint ¶ 17, R. 32, Page ID # 265.
9.  First Amended Complaint ¶ 18, R. 32, Page ID # 265; First Amended Complaint Ex. 3, R. 32-3, Page ID # 281.
10. First Amended Complaint ¶ 19, R. 32, Page ID # 265.

owned business requirement; they were willing to waive and excuse non-compliance with any of the other purported requirements.[11]

As a condition of competing for the grant, applicants were required to allow Progressive and Hello Alice to use their information for cross-selling and other marketing purposes, regardless of whether the applicant ultimately obtained the grant.[12] This established a contract between the applicant and the defendants at the application stage of this process, supported by mutuality of obligation and consideration.[13] And applicants who ultimately receive the grant are contractually required to use the $25,000 in grant money toward the purchase of a qualifying commercial vehicle, which establishes a separate and independent contractual obligation at the grant-awarding stage.[14] Progressive intends to offer additional race-based grants in the future in conjunction with Hello Alice.[15]

---

11. First Amended Complaint ¶ 20, R. 32, Page ID # 266.
12. First Amended Complaint ¶ 21, R. 32, Page ID # 266; *see also* Memorandum of Opinion and Order, R. 51, Page ID # 611 ("By submitting an application, applicants agreed to certain terms and conditions, including terms that allow the Defendants to use an applicant's information for cross-selling and other marketing purposes. The terms also give Defendants a license for their commercial use of the information.").
13. First Amended Complaint ¶ 22, R. 32, Page ID # 266.
14. First Amended Complaint ¶ 22, R. 32, Page ID # 266; *see also* Memorandum of Opinion and Order, R. 51, Page ID # 612 ("[U]ltimate recipients of the 2023 Grant agreed to use the money toward the purchase of a qualifying commercial vehicle.").
15. First Amended Complaint ¶ 24, R. 32, Page ID # 266.

## II. PLAINTIFFS NATHAN ROBERTS AND FREEDOM TRUCK DISPATCH

When Nathan Roberts received the e-mail from Progressive on May 24, 2023, that announced its "Driving Small Business Forward Fund" and the availability of these $25,000 grants, he opened the application and began filling it out.[16] As Mr. Roberts was filling out the application, he came to a part that made clear that only black-owned businesses would be eligible to receive a grant. Because Mr. Roberts is white and his business is white-owned, he closed the application and never submitted it.[17] Mr. Roberts wanted to apply for the grant and stood able and ready to apply,[18] but he never bothered submitting his partially completed application because it would have been futile to do so.[19] His business (Freedom Truck Dispatch) satisfied all of the sup-

---

16. First Amended Complaint ¶¶ 26–27, R. 32, Page ID # 267.

17. First Amended Complaint ¶ 28, R. 32, Page ID # 267. The district court's opinion says that Mr. Roberts "identifies as a white man," which could imply that Mr. Roberts's actual race or sex differs from the race or sex that he uses to describe himself. *See* Memorandum of Opinion and Order, R. 51, Page ID # 610. But the first amended complaint unequivocally alleges that Mr. Roberts "is white," and the district court must accept the truth of that allegation rather than claiming that Mr. Roberts merely "identifies" as white. *See* First Amended Complaint ¶ 30, R. 32, Page ID # 267 ("Mr. Roberts is white").

18. Memorandum of Opinion and Order, R. 51, Page ID # 612 ("Plaintiffs allege that 'Roberts, on behalf of himself and Freedom Truck Dispatch LLC, wished to apply for the grant and was "able and ready to apply[,]"' and that 'Freedom Truck Dispatch, satisfied all of the purported eligibility requirements except for the requirement that the applicant be a black-owned business.'")

19. First Amended Complaint ¶ 28, R. 32, Page ID # 267; *see also* Memorandum of Opinion and Order, R. 51, Page ID # 616 n.5 ("[C]onstruing

posed eligibility requirements for a grant apart from the requirement of black ownership, and Mr. Roberts's business would have been eligible for a grant if Mr. Roberts had been black rather than white.[20] But the grant application window closed on June 2, 2023,[21] and Mr. Roberts and his business will be similarly ineligible for any future grants that Progressive offers only to black-owned businesses.[22]

## III. Procedural History

On August 16, 2023, Mr. Roberts and Freedom Truck Dispatch filed a class-action lawsuit against Progressive and Hello Alice, alleging that their racially discriminatory grantmaking violates 42 U.S.C. § 1981.[23] The plaintiffs sought declaratory and injunctive relief, as well as nominal, compensatory, and punitive damages.[24] Each of the defendants moved to dismiss for lack

---

the factual allegations of the Amended Complaint in the light most favorable to Plaintiffs, this Court finds that an application would have been futile because, regardless of whether or not they satisfied the other requirements, Plaintiffs did not satisfy the 2023 Grant's requirement that applicants 'be a for-profit business majority (51%+) owned and operated by a Black-identifying entrepreneur(s).'").

20. First Amended Complaint ¶ 31, R. 32, Page ID # 267.
21. First Amended Complaint Ex. 4, R. 32-4, Page ID # 289 ("The deadline for applications is June 2, 2023, at 6 p.m. ET."); Memorandum of Opinion and Order, R. 51, Page ID # 612.
22. First Amended Complaint ¶ 33, R. 32, Page ID # 267.
23. Original Complaint, R. 1, Page ID # 1–7.
24. Original Complaint ¶ 39, R. 1, Page ID # 6–7; First Amended Complaint ¶ 51, R. 32, Page ID # 270.

of Article III standing and failure to state a claim.[25] The defendants also moved to compel arbitration, and Circular Board moved to transfer the action to the Northern District of California.[26] On May 21, 2024, the district court granted the defendants' motions to dismiss on the ground that the plaintiffs had failed to allege an injury in fact and therefore failed to allege the elements of Article III standing.[27] Because the district court dismissed for failure to allege standing, it did not reach the merits or consider the defendants' alternative Rule 12(b)(6) motions, motions to compel arbitration, and Circular Board's motion to transfer venue.[28] Then the district court issued a document entitled "judgment entry," which announces that the court "enters judgment in favor of all defendants."[29]

The plaintiffs claimed that they had alleged injury in fact because they were unable to compete on an equal footing for the contracts that Progressive had offered to the applicants and the winners of its grant competition. The first amended complaint alleged that the plaintiffs' inability to compete on an equal basis on account of Mr. Roberts's race inflicted both past and future injury:

---

25. Progressive's Motion to Dismiss, R. 34, Page ID # 326–352; Circular Board LLC's Motion to Dismiss, R. 35, Page ID # 359–389.

26. Memorandum of Opinion and Order, R. 51, Page ID # 612.

27. Memorandum of Opinion and Order, R. 51, Page ID # 617 ("Plaintiffs fail to allege any injury in fact that would support their standing to seek either retrospective or prospective relief.").

28. Memorandum of Opinion and Order, R. 51, Page ID # 613–614 & n.2.

29. Judgment Entry, R. 52, Page ID # 626.

> Mr. Roberts was injured because he and his business were denied the ability to enter into contracts with the defendants—the contract to compete for the grant money, and the subsequent contract connected to receipt of the grant money—based on his race. He continues to be injured by being denied the right to compete for these and similar grants—which, on information and belief, the defendants plan to offer in the future.

First Amended Complaint ¶ 32, R. 32, Page ID # 267. Yet the district court held that this failed even to *allege* an Article III injury in fact. *See* Memorandum of Opinion and Order, R. 51, Page ID # 617 ("Plaintiffs fail to allege any injury in fact that would support their standing to seek either retrospective or prospective relief.").

The district court held that the plaintiffs could not establish past injury unless Progressive would have chosen Mr. Roberts or Freedom Truck Dispatch to receive a $25,000 grant in the absence of the racial restriction. *See* Memorandum of Opinion and Order, R. 51, Page ID # 617–620. And because the first amended complaint never asserts that Mr. Roberts or Freedom Truck Dispatch would have ultimately received one of those $25,000 grants if Progressive had allowed applicants of all races to compete on equal terms, the district court held that the plaintiffs had failed to allege past injury in fact. *See id.* The district court further held that the plaintiffs had failed to explain how their inability-to-compete-on-an-equal-footing injury could be redressed by an award of compensatory damages. *See* Memorandum of Opinion and Order, R. 51, Page ID # 619–620. The district court explained:

> Compensatory damages aim to place an injured person in the position they would have been in had the offensive conduct nev-

er occurred. Compensatory damages are not intended to place a plaintiff in a better position than they would have been in had the offensive conduct not occurred.

Memorandum of Opinion and Order, R. 51, Page ID # 619. For each of these reasons, the district court held that the plaintiffs had failed to allege the elements of Article III standing with respect to their claims for damages.

The district court went on to hold that the plaintiffs lacked standing to seek prospective relief because the application window for Progressive's 2023 grant application closed on June 2, 2023—more than two months before the plaintiffs filed their original complaint. *See* Memorandum of Opinion and Order, R. 51, Page ID # 621. And although the plaintiffs alleged that Progressive planned to offer similar racially restricted grants in the future,[30] the district court refused to accept the truth of that allegation because Progressive had submitted a declaration disclaiming any plans to offer racially restricted grants in the future. *See* Memorandum of Opinion and Order, R. 51, Page ID # 621 ("Progressive avows in a declaration attached to its motion that it does not plan to offer a grant with race-based eligibility criteria in the future."); Declaration of Gargi Patel Duirk, Ex. A, R. 34-1 ¶ 7, Page ID # 358 ("Progressive does not plan to sponsor grants in the future that include race- or other demographic-based eligibility criteria.").

The district court therefore concluded that the plaintiffs lacked standing to seek either damages or prospective relief, and it granted the defendants' motions to dismiss for lack of subject-matter jurisdiction. *See* Memorandum

---

30. *See* First Amended Complaint ¶ 32, R. 32, Page ID # 267.

of Opinion and Order, R. 51, Page ID # 624 ("Plaintiffs lack standing to seek any prospective relief concerning either the 2023 Grant (which ended before Plaintiffs filed this suit) or unnamed, hypothetical future grants."). Then the district court entered "judgment" for the defendants. *See* Judgment Entry, R. 52, Page ID # 626 ("The Court . . . hereby enters judgment in favor of all defendants."). The plaintiffs filed a timely notice of appeal. *See* Notice of Appeal, R. 53, Page ID # 627.[31]

## SUMMARY OF THE ARGUMENT

1. The district court erred in holding that the plaintiffs had failed to allege a past injury in fact. Although the law of the Sixth Circuit (with possible exceptions addressed below) requires plaintiffs seeking damages under 42 U.S.C. § 1981 to allege (and eventually prove) that they would have obtained the sought-after contract in the absence of the unlawful racial discrimination. *See Aiken v. Hackett*, 281 F.3d 516, 519 (6th Cir. 2002). And the district court correctly observed that the plaintiffs had never alleged that they would have obtained one of the $25,000 grants in the absence of the defendants' racial exclusion. *See* Memorandum of Opinion and Order, R. 51, Page ID # 617–620. But the plaintiffs nonetheless alleged Article III injury because they would have obtained the *application-stage* contract formed at the moment an application is submitted had the defendants not declared them ineligible on

---

31. The plaintiffs are not appealing the district court's dismissal of their claims for prospective relief; they are appealing only the district court's dismissal of their claims for damages.

account of their race. That alone establishes past Article III injury, and the plaintiffs were not required to allege an additional injury by claiming that they also would have obtained the *second* contract offered to the chosen recipients of the $25,000 grant.

2. The district court erred in holding that the plaintiffs had failed to allege redressability under Article III. The first amended complaint requested an award of nominal damages, which satisfies the redressability component of Article III standing. *See Uzuegbunam v. Preczewski*, 592 U.S. 279, 292 (2021) ("[N]ominal damages are redress"). The plaintiffs also requested punitive damages, which independently establishes redressability for past injuries. The district court questioned whether the plaintiffs were *entitled* to recover compensatory damages, but that is a merits question and does not affect whether the alleged injuries are *capable* of being redressed by the *requested* relief. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103 (1998) ("[T]here must be redressability—a likelihood that the requested relief will redress the alleged injury."); *Federal Election Commission v. Ted Cruz for Senate*, 596 U.S. 289, 298 (2022) ("For standing purposes, we accept as valid the merits of appellees' legal claims").

3. The district court erred by entering "judgment" for the defendants after dismissing the plaintiffs' claims for lack of Article III standing. A dismissal for lack of Article III standing is a dismissal for lack of subject-matter jurisdiction, and a district court that lacks subject-matter jurisdiction may not enter judgment in favor or against a party. *See Himmelreich v. Federal Bureau*

*of Prisons*, 766 F.3d 576, 579 (6th Cir. 2014). If this Court agrees with the district court's decision to dismiss the plaintiffs' damages claims for lack of Article III standing, then it should vacate the judgment and remand with instructions to dismiss the plaintiffs' claims without prejudice.

## ARGUMENT

### I. THE DISTRICT COURT ERRED BY DISMISSING THE PLAINTIFFS' DAMAGES CLAIMS FOR FAILURE TO ALLEGE ARTICLE III INJURY

In the Sixth Circuit, a plaintiff who seeks damages under 42 U.S.C. § 1981 cannot establish Article III standing unless he alleges and proves that he would have obtained the sought-after contract in the absence of the unlawful racial discrimination. *See Aiken v. Hackett*, 281 F.3d 516, 519 (6th Cir. 2002) (plaintiffs who sued for damages over a city's affirmative-action program for promotions failed to establish a past Article III injury because "[t]hey have neither alleged nor shown that the City would have promoted them if the City had used a race-neutral system in its promotions"); *id.* at 518 ("[The] plaintiffs lacked Article III standing [to sue for damages] because they could not show that they would have been promoted had the City not used a system of racial quotas."). Under this rule, it is not enough for a plaintiff merely to allege that he was deprived of an equal opportunity to compete for the sought-after contract on account of his race. He must also allege (and

ultimately prove) that he would have obtained that contract if the defendant had applied colorblind and race-neutral criteria.[32]

---

32. The plaintiffs respectfully believe that *Aiken*'s holding on this issue is wrong and intend to seek the overruling of that decision if this case reaches the en banc court or the Supreme Court of the United States. The past denial of an opportunity to compete on an equal footing because of one's race always qualifies as an Article III injury in fact, regardless of whether the plaintiff would have obtained the sought-after contract or benefit in the absence of racial discrimination. *See Wooden v. Board of Regents of University System of Georgia*, 247 F.3d 1262, 1280 (11th Cir. 2001) ("[T]he fact that Green was eventually rejected under race-neutral criteria does not mean that he suffered no cognizable injury from the unequal treatment. To reiterate, the injury in these kinds of cases is not the denial of the sought-after benefit, but rather the direct exposure to unequal treatment."); *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n.14 (1973) ("[A]n identifiable trifle is enough for standing" (citation and internal quotation marks omitted)). Whether the racial discrimination caused the plaintiff to lose the sought-after contract will affect whether and to what extent the plaintiff can recover damages—an issue that goes to the merits rather than standing. *See Wooden*, 247 F.3d at 1280 ("A showing that Green was denied admission under race-neutral criteria, and that his application would have been handled in exactly the same way even if race were not a factor . . . , may well defeat Green's claim or establish a *Mt. Healthy* defense. But at least in this context the Supreme Court has chosen to define the relevant injury-in-fact without regard to the end result of the defendant's consideration of race."); *Texas v. Lesage*, 528 U.S. 18, 20–21 (1999) ("[E]ven if the government has considered an impermissible criterion in making a decision adverse to the plaintiff, it can nonetheless defeat *liability* by demonstrating that it would have made the same decision absent the forbidden consideration." (emphasis added)). We acknowledge, however, that this panel must apply *Aiken* as binding precedent. *See* 6 Cir. R. 32.1(b) ("Published panel opinions are binding on later panels. A published opinion is overruled only by the court en banc."). *Aiken* could perhaps be distinguished; that case did not involve a situation, like the one here, in which a defendant's refusal to let the

The district court held that the plaintiffs had failed to allege past "injury in fact" because they never alleged that Progressive and Hello Alice would have awarded them one of the $25,000 grants in the absence of the racial exclusion. *See* Memorandum of Opinion and Order, R. 51, Page ID # 617–620. But that is a non sequitur. There were *two* contracts that Progressive and Hello Alice were offering to those interested in obtaining a $25,000 grant. One of those contracts was formed at the application stage, when an applicant agrees to allow Progressive and Hello Alice to use its information for cross-selling and other marketing purposes as a condition for submitting its application and having itself considered for a grant. *See* Memorandum of Opinion and Order, R. 51, Page ID # 611 ("By submitting an application, applicants agreed to certain terms and conditions, including terms that allow the Defendants to use an applicant's information for cross-selling and other marketing purposes. The terms also give Defendants a license for their commercial use of the information."); First Amended Complaint ¶ 21, R. 32, Page ID # 266 ("In exchange for being allowed to compete for the grant, applicants agreed to certain terms and conditions that provide benefits to the defendants and involve detriments to the applicants—including terms that allow the defendants to use the applicant's information for cross-selling and other marketing purpos-

---

plaintiff compete for a contract made it impossible to prove that the plaintiff would have won the contract had he been allowed to compete. But rather than press this distinction here, the plaintiffs will assume *arguendo* that *Aiken* forecloses their entitlement to relief with respect to the second contract.

es. The terms also give Hello Alice and Progressive a license for their commercial use of the information.").

The second contract is formed only when an applicant is chosen to receive one of the $25,000 grants. This contract—which is a separate agreement from the contract formed at the application stage—requires the grant recipient to use the $25,000 that it receives toward the purchase of a qualifying commercial vehicle. *See* Memorandum of Opinion and Order, R. 51, Page ID # 612 ("[U]ltimate recipients of the 2023 Grant agreed to use the money toward the purchase of a qualifying commercial vehicle."); First Amended Complaint ¶ 22, R. 32, Page ID # 266 ("[B]oth the opportunity to compete for a grant and the awarding of the grant itself involve contracts, supported by mutuality of obligation and consideration.").

The district court correctly observed that the first amended complaint does not allege that the plaintiffs would have obtained one of the $25,000 grants—or the contract that grant recipients enter upon receiving the $25,000 from the defendants—in the absence of the racial exclusion. *See* Memorandum of Opinion and Order, R. 51, Page ID # 619 ("Plaintiffs do not allege anywhere in their Amended Complaint that Freedom Truck Dispatch would have received one of the ten 2023 Grants under a race-neutral policy."). But that does not defeat the plaintiffs' standing to sue for damages under 42 U.S.C. § 1981 because the plaintiffs alleged that they would have obtained the contract that was offered at the *application* stage had the defend-

ants not limited this application-stage contract to blacks and black-owned businesses.

Paragraph 18 of the first amended complaint describes each eligibility criterion that the defendants imposed as a condition of entering their application-stage contract:

> Progressive announced that "[a]pplicants must meet all of the below criteria to be eligible for this opportunity:"
>
> - Be a for-profit business that is "majority (51%+) owned and operated by a Black-identifying entrepreneur(s)";
>
> - Have 10 or fewer employees and less than $5 million in annual gross revenue;
>
> - Have a demonstrated need for a qualifying commercial vehicle and a clear plan for growth as a result of this vehicle purchase; and
>
> - Not be an independent contractor whose primary business is for a rideshare service such as Uber or Lyft, or third-party food delivery such as UberEats, DoorDash, PostMates, Grubhub, Instacart, etc.

First Amended Complaint ¶ 18, R. 32, Page ID # 265. And paragraph 31 alleges that the black-owned business requirement was the *only* eligibility criterion that the plaintiffs failed to satisfy. *See* First Amended Complaint ¶ 31, R. 32, Page ID # 267 ("Mr. Roberts's business, Freedom Truck Dispatch, satisfied all of the purported eligibility requirements except for the requirement that the applicant be a black-owned business."). The first amended complaint also alleges that Mr. Roberts declined to submit the application solely

because his business is white-owned and therefore ineligible to apply. *See First Amended Complaint* ¶ 28, R. 32, Page ID # 267 ("[H]e closed the application and did not apply because he is white and his business is white-owned."). So Mr. Roberts and Freedom Truck Dispatch would have obtained and entered into the application-stage contract with the defendants were it not for the unlawful racial exclusion, and the pleadings allege as much.

And to remove any doubt, paragraph 32 specifically mentions the plaintiffs' ineligibility for the application-stage contract as a past "injury in fact" that the plaintiffs are suing to remedy:

> Mr. Roberts was injured because he and his business were denied the ability to enter into contracts with the defendants—*the contract to compete for the grant money, and the subsequent contract connected to receipt of the grant money*—based on his race.

First Amended Complaint ¶ 32, R. 32, Page ID # 267 (emphasis added). Yet the district court ignored all of this and focused only on the second of the two contracts, insisting that the plaintiffs could not establish past injury unless they allege that they would have obtained the contract offered to the 10 chosen grant recipients. But it was enough for the plaintiffs to allege that they would have obtained and entered into the application-stage contract that the defendants were offering to those who satisfied their eligibility criteria. They were excluded from the application-stage contract because Mr. Roberts is white, and they have would have obtained this contract if the defendants had not limited eligibility to black-owned businesses. That is all that is needed to establish standing to seek damages under *Aiken*, because the plaintiffs alleged

that the defendants' racial exclusion not only subjected them to discriminatory treatment but also cost them a contract that they otherwise would have obtained. *See Aiken*, 281 F.3d at 519; *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 210 (1995) ("Adarand's allegation that it has lost a contract in the past because of a subcontractor compensation clause of course entitles it to seek damages for the loss of that contract").

The plaintiffs' district-court briefing clearly explained the two-contracts point and relied on their exclusion from the application-stage contract to establish standing to seek damages:

> Standing is easiest to see when one realizes that the Driving Business Forward Program consists of two contracts—the Competition Contract and the Final Grant. . . . [T]he plaintiffs were and will be injured by being excluded from entering the Competition Contract . . . . Even assuming the plaintiffs would not ultimately have secured the Final Grant, they were *still* injured by the racially discriminatory terms in the Competition Contract.

Pls.' Response to Defs.' Motions to Dismiss, R. 43, Page ID # 516. Yet the district court, in a footnote, refused to consider this argument:

> Because the Court does not have subject matter jurisdiction over Plaintiffs' claims, it cannot address the merits of whether the 2023 Grant is a contract—let alone whether it is two contracts. Even so, Plaintiffs have not offered any legitimate reason as to how this issue—whether the 2023 Grant is a contract (or two contracts)—has any impact on the issue of standing.

Memorandum of Opinion and Order, R. 51, Page ID # 615 n.4. But this response begs the question by assuming that the Court lacks subject-matter jurisdiction before it has addressed or refuted the plaintiffs' argument for Arti-

cle III standing. The district court was also wrong to deny that the plaintiffs had "offered any legitimate reason" for how the two-contracts point affects the standing analysis. *See id.* The plaintiffs cannot establish standing to sue for damages over their exclusion from the *second* of the two contracts—the contract awarded to the ultimate recipients of the $25,000—because they did not allege that they would have obtained that contract in the absence of the racial exclusion. *See Aiken*, 281 F.3d at 519. But the plaintiffs *have* standing to seek damages over their exclusion from the application-stage contract, because they *would* have obtained that contract had the defendants not limited eligibility to black-owned businesses.

## II. THE DISTRICT COURT ERRED BY DISMISSING THE PLAINTIFFS' DAMAGES CLAIMS FOR FAILURE TO ALLEGE REDRESSABILITY

The district court was also wrong to hold that the plaintiffs had failed to allege redressability under Article III. *See* Memorandum of Opinion and Order, R. 51, Page ID # 619 ("Even if this Court were to accept Plaintiffs' injury theory that they can seek retrospective relief for their inability to compete on equal footing for the 2023 Grant without also alleging that they would have otherwise received the 2023 Grant, Plaintiffs have not explained how compensatory damages would redress their inability to compete for a grant they do not allege they would have received."). The first amended complaint spe-

cifically asks for an award of nominal damages,[33] and a request for nominal damages automatically satisfies the redressability component of standing whenever a plaintiff sues over a past injury. *See Uzuegbunam v. Preczewski*, 592 U.S. 279, 292 (2021) ("[N]ominal damages are redress"). Indeed, the plaintiffs are *entitled* to recover nominal damages if they cannot allege or prove compensatory, statutory, or punitive damages. *See id.* at 287 ("[A] prevailing plaintiff 'is entitled to a verdict for nominal damages' whenever 'no other [kind of damages] be proved.'" (quoting *Webb v. Portland Manufacturing Co.*, 29 F. Cas. 506, 508–09 (No. 17,322) (CC Me. 1838)); *id.* at 290 ("Nominal damages are . . . . instead the damages awarded by default until the plaintiff establishes entitlement to some other form of damages, such as compensatory or statutory damages."). That is all that is needed to establish redressability under *Uzuegbunam*. And if that were not enough, the plaintiffs are also requesting punitive damages,[34] which independently creates redressability for past injuries alleged regardless of the strengths or weaknesses of the punitive-damages claim. *See Federal Election Commission v. Ted Cruz for Senate*, 596 U.S. 289, 298 (2022) ("For standing purposes, we accept as valid the merits of appellees' legal claims"). The plaintiffs may or may not be able to prove an entitlement to compensatory damages (or any other type of dam-

---

33. *See* First Amended Complaint ¶ 51, R. 32, Page ID # 270 ("Mr. Roberts respectfully requests that the court: . . . (d) award nominal, compensatory, and punitive damages against each of the defendants").

34. *See* note 33, *supra*.

ages) after discovery and trial, but that has no bearing on whether they have *alleged* redressability in their pleading. The district court erred by equating a lack of entitlement to compensatory damages (a merits question) with a failure to allege redressability for past injury under Article III.

And for good measure, the district court was also wrong to deny that the plaintiffs could obtain compensatory damages absent proof that they would have obtained one of the $25,000 grants in the absence of racial discrimination. The plaintiffs can still pursue compensatory damages for: (1) The time that Mr. Roberts spent filling out the application before discovering that white-owned businesses were categorically ineligible for the grants; and (2) The value of the lost opportunity to compete for the $25,000 grants. The value of that lost opportunity is not zero, as the district court appeared to believe, because the chance of obtaining $25,000 has value even if the probability of ultimately obtaining the sought-after cash is small. That is why people pay money for lottery tickets. In all events, this is a merits question that should not be considered on Rule 12(b)(1), but the district court gave the wrong answer to a merits question that it should never have reached in the first place.

## III. The District Court Erred By Entering Judgment For The Defendants After Concluding That It Lacked Subject-Matter Jurisdiction Over The Controversy

Even if this Court agrees with the district court's decision to dismiss the damages claims for lack of Article III standing, it should still vacate the entry

of "judgment" for the defendants. *See* Judgment Entry, R. 52, Page ID # 626 ("The Court . . . hereby enters judgment in favor of all defendants."). A dismissal for lack of Article III standing is a dismissal for lack of subject-matter jurisdiction,[35] and a district court that lacks subject-matter jurisdiction may not, under any circumstance, enter judgment in favor or against a party. *See Himmelreich v. Federal Bureau of Prisons*, 766 F.3d 576, 579 (6th Cir. 2014) ("Put bluntly, in the absence of jurisdiction, the court lacks the power to enter judgment."); *id.* ("If the court has no jurisdiction, it has no power to enter a judgment on the merits and must dismiss the action." (citation and internal quotation marks omitted)); *Pettrey v. Enterprise Title Agency, Inc.*, 584 F.3d 701, 703 (6th Cir. 2009) ("Article III conditions the exercise of federal judicial power on the existence of a live, ongoing case or controversy.").[36] If this Court agrees with the district court's analysis, then it should vacate the judgment and remand with instructions to enter an order dismissing the

---

35. *See State ex rel. Tennessee General Assembly v. United States*, 931 F.3d 499, 507 (6th Cir. 2019) ("Standing is a jurisdictional requirement. If no plaintiff has standing, then the court lacks subject-matter jurisdiction." (citation omitted)).

36. *See also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *see also Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." (citation and internal quotation mark omitted)); *Chapman v. First Index, Inc.*, 796 F.3d 783, 786 (7th Cir. 2015) (Easterbrook, J.) ("[A] district court cannot enter judgment in a moot case. All it can do is dismiss for lack of a case or controversy.").

plaintiffs' claims for lack of subject-matter jurisdiction. It should also instruct the district court to dismiss the plaintiffs' claims without prejudice, as a court that lacks jurisdiction is powerless to enter a "with prejudice" dismissal. *See Michigan Surgery Investment, LLC v. Arman*, 627 F.3d 572, 576–77 (6th Cir. 2010) ("Dismissals of actions that do not reach the merits of a claim, such as dismissals for lack of jurisdiction, ordinarily are without prejudice." (citation and internal quotation marks omitted)); *Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (Easterbrook, J.) ("A suit dismissed for lack of jurisdiction cannot *also* be dismissed 'with prejudice'; that's a disposition on the merits, which only a court with jurisdiction may render. 'No jurisdiction' and 'with prejudice' are mutually exclusive." (citation omitted)).[37]

---

37. *See also Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) ("[T]he district court clearly erred when it dismissed Plaintiffs' action for lack of personal jurisdiction 'with prejudice.'"); *Pratt v. Ventas, Inc.,* 365 F.3d 514, 522 (6th Cir. 2004) ("[A] dismissal for lack of subject matter jurisdiction does not operate as an adjudication on the merits for preclusive purposes." (citation and internal quotation mark omitted)).

# CONCLUSION

The judgment of the district court should be reversed, and the case re-manded for further proceedings.

Respectfully submitted.

/s/ Jonathan F. Mitchell

JOSEPH P. ASHBROOK
JULIE E. BYRNE
BENJAMIN M. FLOWERS
Ashbrook Byrne Kresge LLC
Post Office Box 8248
Cincinnati, Ohio 45249
(513) 582-7424 (phone)
(513) 216-9882 (fax)
jpashbrook@ashbrookbk.com
jebyrne@ashbrookbk.com
bflowers@ashbrookbk.com

JONATHAN F. MITCHELL
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

GENE P. HAMILTON
NICHOLAS R. BARRY
America First Legal Foundation
611 Pennsylvania Avenue SE #231
Washington, DC 20003
(202) 964-3721 (phone)
gene.hamilton@aflegal.org
nicholas.barry@aflegal.org

Dated: August 19, 2024

*Counsel for Appellants*

# CERTIFICATE OF COMPLIANCE

### with type-volume limitation, typeface requirements, and type-style requirements

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,737 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it uses Equity Text B 14-point type face throughout, and Equity Text B is a proportionally spaced typeface that includes serifs.

 /s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
Dated: August 19, 2024                    *Counsel for Appellants*

# CERTIFICATE OF SERVICE

I certify that on August 19, 2024, this document was electronically filed with the clerk of the court for the U.S. Court of Appeals for the Sixth Circuit and served through CM/ECF upon:

STEPHANIE SCHUSTER
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 373-6595 (phone)
(202) 739-3001 (fax)
stephanie.schuster@morganlewis.com

EMILY CUNEO DeSMEDT
Morgan, Lewis & Bockius LLP
502 Carnegie Center
Princeton, New Jersey 08540
(609) 919-6673
(877) 432-9652
emily.desmedt@morganlewis.com

HANNA E. MARTIN
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, New York 10178
(212) 309-6716
(212) 309-6000
hanna.martin@morganlewis.com

MICHAEL J. RUTTINGER
Tucker Ellis LLP
950 Main Avenue, Suite 1100
Cleveland, Ohio 44113
(216) 696-4456 (phone)
(216) 592-5009 (fax)
michael.ruttinger@tuckerellis.com

*Counsel for Appellees Progressive Preferred Insurance Co. and Progressive Casualty Insurance Co.*

MICHAEL N. UNGAR
DOLORES GARCIA
HALDEN R. SCHWALLIE
Ub Greensfelder LLP
Skylight Office Tower
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113-1406
(216) 583-7000 (phone)
(216) 583-7001 (fax)
mungar@ubglaw.com
dgarcia@ubglaw.com
hschwallie@ubglaw.com

NEAL KUMAR KATYAL
DAVID M. FOSTER
REEDY C. SWANSON
Hogan Lovells US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
(202) 637-5600 (phone)
(202) 637-5910 (fax)
neal.katyal@hoganlovells.com
david.foster@hoganlovells.com
reedy.swanson@hoganlovells.com

*Counsel for Appellee Circular Board Inc.*

 /s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Appellants*

# ADDENDUM

# DESIGNATION OF RELEVANT LOWER-COURT DOCUMENTS

| R. | Description | Page ID # |
|---|---|---|
| 1 | Complaint | 1–50 |
| 32 | First Amended Complaint | 262–321 |
| 34 | Progressive's Motion to Dismiss | 326–358 |
| 35 | Circular Board LLC's Motion to Dismiss | 359–422 |
| 43 | Plaintiffs' Response to Defendants' Motions to Dismiss | 501–538 |
| 51 | Memorandum of Opinion and Order | 609–625 |
| 52 | Judgment | 626 |
| 53 | Notice of Appeal | 627 |