**No. 24-3454**

# In the
# United States Court of Appeals
## for the Sixth Circuit

NATHAN ROBERTS, and FREEDOM TRUCK DISPATCH, LLC,
on behalf of himself and all others similarly situated,

*Plaintiffs-Appellants,*

v.

PROGRESSIVE PREFERRED INSURANCE COMPANY; PROGRESSIVE CASUALTY
INSURANCE COMPANY; CIRCULAR BOARD INC., originally named Circular Board, LLC,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland, No. 1:23-cv-01597.
The Honorable Patricia A. Gaughan, Judge Presiding.

**BRIEF OF *AMICUS CURIAE* THE EQUAL PROTECTION PROJECT
SUPPORTING APPELLANTS AND SUPPORTING REVERSAL**

WILLIAM A. JACOBSON
EQUAL PROTECTION PROJECT OF
THE LEGAL INSURRECTION FOUNDATION
18 Maple Avenue 280
Barrington, Rhode Island 02806
(401) 246-4192

*Counsel for Amicus Curiae The Equal Protection Project*



UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 24-3454                    Case Name: Roberts v. Progressive Preferred Ins. Co

Name of counsel: William A. Jacobson

Pursuant to 6th Cir. R. 26.1, Equal Protection Project of the Legal Insurrection Foundation
*Name of Party*

makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No

CERTIFICATE OF SERVICE

I certify that on _____ August 26, 2024 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/William A. Jacobson
Equal Protection Project of the
Legal Insurrection Foundation

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

# TABLE OF CONTENTS

**Page**

DISCLOSURE OF CORPORATE AFFILIATIONS AND
FINANCIAL INTEREST ...........................................................................i

TABLE OF CONTENTS ........................................................................... ii

TABLE OF AUTHORITIES ..................................................................... iii

INTEREST OF *AMICUS CURIAE* ...........................................................1

ARGUMENT .............................................................................................4

    I.     The district court erroneously held that Plaintiffs/Appellants
have not alleged injury from Appellees/Defendants' racially
discriminatory conduct ...........................................................4

    II.    42 U.S.C. § 1981 proscribes racial discrimination in the
making or enforcement of contracts against, or in favor of,
any race ...................................................................................8

    III.   Affirmance based on Appellees' argument on the "free
speech" issue would gut existing antidiscrimination civil
rights laws .............................................................................11

CONCLUSION ........................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*303 Creative LLC v. Elenis*,
    143 S. Ct. 2298 (2023) ................................................................................12

*Agudath Israel of Am. v. Cuomo*,
    983 F.3d 620 (2d Cir. 2020) .......................................................................8

*Aiken v. Hackett*,
    281 F.3d 516 (6th Cir. 2002) ........................................................... 2, 4, 5, 6

*Am. Alliance for Equal Rights v. Fearless Fund Mgmt., LLC*,
    No. 23-13138, 2023 WL 6520763 (11th Cir. Sept 30, 2023) .......................10

*Ass'n for Fairness in Bus. Inc. v. N.J.*,
    82 F. Supp. 2d 353 (D.N.J. 2000) ...............................................................8

*Baker v. McDonald's Corp.*,
    686 F. Supp. 1474 (S.D. Fla. 1987), ), *aff'd without opinion*, 865
    F.2d 1272 (11th Cir. 1988) .........................................................................10

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*,
    6 F.4th 1247 (11th Cir. 2021) .....................................................................12

*Donahue v. City of Boston*,
    304 F.3d 110 (1st Cir. 2004) ....................................................................5, 6

*Lanphear v. Prokop*,
    703 F.2d 1311 (D.C. Cir. 1983) .................................................................9

*McDonald v. Santa Fe Trail Transp. Co.*,
    427 U.S. 273 (1976) ............................................................................10, 11

*Murray v. Thistledown Racing Club, Inc.*,
    770 F.2d 63 (6th Cir. 1985) .......................................................................9

*N.E. Fla. Chapter of Assoc. Gen. Contractors of Am. v.
City of Jacksonville, [AGC]*,
    508 U.S. 656 (1993) ...................................................................................5

*Perrea v. Cincinnati Pub. Sch.*,
    709 F. Supp. 2d 628 (S.D. Ohio 2010) .......................................................8

iii

*Roberts v. Progressive Preferred Ins. Co.*,
    No. 1:23-cv-01597-PAG, 2024 WL 2295482
    (N.D. Ohio May 21, 2024) ..........................................................2, 4

*Rogers v. Windmill Pointe Vill. Club Ass'n, Inc.*,
    967 F.2d 525 (11th Cir. 1992)...................................................8

*Rumsfeld v. Forum for Academic & Institutional Rights., Inc.*,
    547 U.S. 47 (2006)........................................................13

*Runyon v. McCrary*,
    427 U.S. 160 (1976).....................................................12

*Schafer v. Multiband Corp.*,
    629 F. Appx. 653 (6th Cir. 2015) ...............................................11

*Texas v. Lesage*,
    528 U.S. 18 (1999)......................................................5, 6

*Vitolo v. Guzman*,
    999 F.3d 353 (6th Cir. 2021)...............................................8

## Statutes & Other Authorities:

42 U.S.C. § 1981 ................................................................. *passim*

Fed. R. App. P. 29(a)(2) ..............................................................1

Fed. R. App. P. 29(a)(4)(E) ...........................................................1

*NYU Whites-Only "Anti-Racist" Workshop Challenged By Equal Protection Project*¸ available at https://legalinsurrection.com/2023/07/nyu-whites-only-anti-racist-workshop-challenged-by-equal-protection-project......................................13

Office of Civil Rights Administrative Complaint (hereinafter "OCR Complaint"), July 14, 2022, available at https://legalinsurrection.com/wp-content/uploads/2023/07/OCR-Complaint-New-York-University.pdf .............13, 14

## INTEREST OF *AMICUS CURIAE*[1]

The Equal Protection Project (EPP) is a project of the Legal Insurrection Foundation (LIF),[2] a Rhode Island tax-exempt 501(c)(3), devoted to the fair treatment of all persons without regard to race or ethnicity.[3]  Our guiding principle is that there is no "good" form of racism.  The remedy for racism never is more racism.

Since its creation in February 2023, EPP has filed more than thirty civil rights complaints, in various fora, against governmental or federally funded entities that have engaged in racially discriminatory conduct in various forms, and its work is ongoing.  EPP updates the public on its activities at EPP's website.[4]

The district court dismissed this case for lack of standing, finding that Appellants, a trucking company and its White owner, had suffered no injury, despite being deprived of the ability to apply for and receive a significant monetary

---

[1] All parties have consented to the filing of this *amicus curiae* brief. Fed. R. App. P. 29(a)(2).

[2] See, https://legalinsurrectionfoundation.org/.

[3] No party's counsel authored this brief in whole or in part, no party or party's counsel contributed money that was intended to fund preparing or submitting this brief, and no person—other than the *amicus curiae*, its members, or its counsel—contributed money that was intended to fund preparing or submitting this brief. Fed. R. App. P. 29(a)(4)(E).

[4] See, https://equalprotect.org/.

grant solely because of the owner's skin color.[5]  Failure to reverse this dismissal will have a profoundly negative impact on EPP's attempt to vindicate constitutional and statutory protections against racial discrimination, for two reasons.

First, the district court's order was based on an erroneous interpretation of this Court's ruling in *Aiken v. Hackett.*[6] The district court held that *Aiken* requires a plaintiff to allege that it *would have received the grant it was applying for* absent the discrimination.  That is not what *Aiken* held.  Second, affirmance of the district court's finding of no injury in cases of clear racially discriminatory conduct will help normalize racial discrimination and render the very real, irreparable harm that flows from racial discrimination irremediable.

In addition, EPP addresses an argument raised in the district court by *amici curiae* the Southern Poverty Law Center ("SPLC"), Lawyers' Committee for Civil Rights Under Law, the Hispanic National Bar Association, and Asian Americans Advancing Justice – AAJC (collectively, "SPLC").[7] That argument, which will likely be reiterated in this Court in support of Appellees, asserts that 42 U.S.C. § 1981 does not protect the interests of White citizens.  That is not the law.

---

[5] *Roberts v. Progressive Preferred Ins. Co.*, No. 1:23-cv-01597-PAG, 2024 WL 2295482 (N.D. Ohio May 21, 2024).

[6] 281 F.3d 516 (6th Cir. 2002).

[7] SPLC Updated *Amici Curiae* Brief, RE 36-1.

Finally, although unaddressed by the district court due to its holding on standing, Defendants, now Appellees, had each moved to dismiss this action on a ground apart from standing;[8] namely, that "to alter the eligibility criteria" for the contract in this case "would infringe Progressive's First Amendment right to freedom of expression."[9] This argument, should it be raised on this appeal by Appellants and supportive *Amici*, would have a profoundly negative impact on EPP's attempt to vindicate constitutional and statutory protections against racial discrimination because it would carve out a massive loophole by which discriminatory conduct would be excused as protected speech.  Such a judgment, were it to issue, would eviscerate not only 42 U.S.C. § 1981, but also other civil rights laws.

While EPP supports Appellants' arguments in favor of reversal,[10] EPP submits this brief to address three areas squarely in EPP's experience: (i) the destructive effects and irreparable harm resulting from racially discriminatory conduct, (ii) the broad protections afforded by civil rights statutes, including 42 U.S.C. § 1981, which protect citizens of all races from racially discriminatory

---

[8] Appellees' Motions to Dismiss, RE 34 (Progressive), 35 (Circular Board).

[9] Appellee Progressive's Motion to Dismiss, RE 34, Page ID # 350.

[10] EPP submits its specific arguments on standing as additional grounds to those of Appellants supporting reversal.

contract, and (iii) the societal trend toward increased racial discrimination in the name of anti-racism.

## ARGUMENT

**I.     The district court erroneously held that Plaintiffs/Appellants have not alleged injury from Appellees/Defendants' racially discriminatory conduct.**

The district court dismissed this case because it reasoned that under this Court's controlling precedent, Plaintiffs, now Appellants, simply were not injured by Appellee/Defendants' racially discriminatory conduct. *Roberts*, 2024 WL 2295482, at *4 (citing *Aiken*, 218 F.3d at 519). The district court held that *Aiken* requires a plaintiff to allege both that a "racial preference cost them some benefit," and that "under a race-neutral policy they would have received the benefit." *Id.* (quoting *Aiken*, 218 F.3d at 519)(cleaned up). While that statement from *Aiken* is quoted accurately, the district court erred by taking that language in isolation and out of context.

In *Aiken*, a group of 177 City of Memphis, Tennessee police officers competed for 94 police sergeant jobs and were ranked for promotion by their "composite scores." The City nonetheless promoted 18 Black officers who had not scored in the top 94, resulting in the lawsuit by White officers who were not promoted. But neither the lead plaintiff, Aiken, nor his co-plaintiffs, who were also White, *had scored in the top 94*. In other words, even if there had been no racial

preference, Aiken *would not and could not have been promoted using the City's criteria.* "[I]t appears beyond debate that absent the forbidden criterion used by the City, the Appellants still would not have been promoted to sergeant," as this Court observed. "The Appellants' composite scores (not the City's affirmative action program) kept them from being promoted." *Aiken*, 218 F.3d at 518-19. These parties had no standing because, empirically, they could not have been injured due to racial discrimination – which is not the case here.

The other cases cited by *Aiken* and the district court are the same. In *Texas v. Lesage*, 528 U.S. 18 (1999), the University of Texas selected 20 PhD candidates out of a pool of 223 applicants, but Lesage's application was so poor in comparison to others that it did not even make it into the university's field of the top 40 applicants. *Id.* at 19. Thus while the university had taken race into account in making its *final* selections, there was no way, even in a race-neutral setting, Lesage would have been selected. *Id.* at 20. Where, the Court explained, it is undisputed that a "discrete" decision would have come out the same way regardless of the application of a race-based criterion, "there is no cognizable injury warranting relief." *Id.* at 21. *See also Donahue v. City of Boston*, 304 F.3d 110 (1st Cir. 2004), in which plaintiff's application for appointment to the police academy was so poor that 580 other applicants would have had to be rejected before the City reached Donahue's application. *N.E. Fla. Chapter of Assoc. Gen. Contractors of Am. v.*

*City of Jacksonville* [*AGC*], 508 U.S. 656, 666 (1993)(plaintiff not "required to allege that but for a [racially] discriminatory policy, [benefit] would have been awarded"; rather, "allegation that a 'specific project' was 'precluded' by . . . [racially discriminatory] ordinance . . . sufficient to establish standing.").  Thus a plaintiff is *not required* to allege that he would have received a benefit to establish standing; but, consistent with the rule of *Aiken*, a plaintiff that *could not and would not* have received a benefit even absent racially discriminatory conduct has no standing.

That is certainly not the case here, where absent the racially discriminatory criteria used by Appellees, Appellants *could have*, and very possibly *would have* been selected for Progressive's contractual grant program.  Appellant Roberts plausibly thought this was a definite possibility, as he immediately, upon receipt of the grant program application, began filling it out.  And he was so incensed that he was ineligible to apply *solely because of his skin color*, that he immediately sent the application off to a civil rights organization he hoped would defend his rights in court.  Under these circumstances, *Aiken*, *Lesage*, *AGC* and *Donahue* are no bar to Appellants prosecuting this case, and presented with such facts, the Court deciding each would have acknowledged Appellants' standing to do so.

Appellees' position in this regard is especially suspect in that Progressive's very reason for this contest was to remedy the alleged harm caused by what

Progressive claims is past and ongoing discrimination against Black business owners:

> Progressive sells insurance, including commercial auto insurance. Progressive also engages in various philanthropic activities, including funding grants that support small businesses. In 2023, via the Grant Program, Progressive offered $25,000 grants to ten Black-owned small businesses. It did so because [m]ultiple studies have shown how **inequities have made it hard for Black entrepreneurs to access capital**. Progressive thus determined to donate funds to alleviate this challenge.

Appellee Progressive's Motion to Dismiss, RE 34, Page ID # 336 – 337 (emphasis added). Defendant Circular Board (d/b/a Hello Alice) made a similar claim, in even more vehement language:

> Hello Alice's mission is to help small businesses, and Hello Alice vehemently opposes racial discrimination. Indeed, a critical component of Hello Alice's mission is to *combat* the effects that generations of pernicious racism have had on America's capital infrastructure. Federal law does not compel purely private actors like Hello Alice, when choosing how and to whom they will donate money, to **blind themselves to the centuries of invidious racism that have produced substantial existing racial inequities in access to capital**. As the amici organizations explain, this suit is in fact 'antithetical to and outside the scope of Section 1981's congressional purpose.'

Appellee Circular Board's Motion to Dismiss, RE 35, Page ID # 368 (italics in original, bold added)(quoting SPLC Initial *Amici Curiae* Brief, RE 21-1, Page ID # 203). Appellees' argument is that its grant program is required to rectify "inequities" because past and present discrimination against Black business owners caused them to suffer disadvantages in "access to capital," i.e. injuries-in-fact. Yet

they simultaneously argue that the very same type of discrimination that Black business owners suffered would *not* cause harm to those discriminated against by *their* grant program.  Appellees cannot have it both ways logically or legally.

Other cases in and out of this Circuit agree that racially discriminatory application processes cause injury.  *See Perrea v. Cincinnati Pub. Sch.*, 709 F. Supp. 2d 628, 640 (S.D. Ohio 2010)("one form of injury . . . is being forced to compete in a race-based system that may prejudice the plaintiff"); *Rogers v. Windmill Pointe Vill. Club Ass'n, Inc.*, 967 F.2d 525, 528 (11th Cir. 1992)("injury may be presumed from the fact of discrimination"); *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 636 (2d Cir. 2020)(a "presumption of . . . injury flows from a violation of constitutional rights); *Ass'n for Fairness in Bus. Inc. v. N.J.*, 82 F. Supp. 2d 353, 363 (D.N.J. 2000)(irreparable injury where plaintiffs were forced to "compete on an unfair playing field" because of racial set-aside program); *Vitolo v. Guzman*, 999 F.3d 353, 361 (6th Cir. 2021)(irreparable harm exists where government was allocating limited coronavirus relief funds "based on the race and sex of the applicants").  The district court erred by failing to recognize this overarching rule at the heart of the civil rights laws.

## II.  42 U.S.C. § 1981 proscribes racial discrimination in the making or enforcement of contracts against, or in favor of, any race.

SPLC argued in the district court, and presumably will argue here, that "Plaintiffs' perversity in weaponizing this country's long-standing commitment to

equalizing economic opportunities for Black business owners is antithetical to and outside of the scope of Section 1981 . . . ."  SPLC Updated *Amici Curiae* Brief, RE 36-1, Page ID # 435.  SPLC went on to argue that "Section 1981 should not now be weaponized in 2023 to challenge remedial philanthropic programs aimed at providing opportunities for Black business owners," *id.* at #440, and that this Court "should not incentivize businesses to weaponize Section 1981."  *Id.* at #445.

Yet SPLC reluctantly concedes, as it must, "that Section 1981 'prohibits racial discrimination against all groups,'" *id.* at #441, quoting *Murray v. Thistledown Racing Club, Inc*., 770 F.2d 63, 67 (6th Cir. 1985), but argues that "the Sixth Circuit has explained that 'the majority plaintiff who asserts a claim of racial discrimination' must still do so 'within the historical context of the Act.'"  *Id.* SPLC fails to explain what *Murray* meant by this, however, and omits a key phrase from *Murray*, which actually said as follows:  "As with the minority plaintiff, the majority plaintiff who asserts a claim of racial discrimination in employment does so within the historical context of the Act," 770 F.2d at 67.  That is, § 1981 *does* apply to a plaintiff in a case where plaintiff was "discriminated against 'despite his majority status,'" *id.* (quoting *Lanphear v. Prokop,* 703 F.2d 1311, 1315 (D.C. Cir. 1983)), which is exactly the case here.

At bottom, SPLC's argument is that 42 U.S.C. § 1981 cannot, or perhaps *should not*, be used by White plaintiffs – the same argument made in Judge

Wilson's dissent in *Am. Alliance for Equal Rights v. Fearless Fund Mgmt., LLC*, No. 23-13138, 2023 WL 6520763, at *2 (11th Cir. Sept 30, 2023), which SPLC cites approvingly.[11]  There, Judge Wilson argued that "Plaintiffs bringing a cause of action under § 1981 must show that . . . they are a member of a racial minority . . ." *Id*.  This legally erroneous assertion was rejected by the panel majority, who observed properly that the "Supreme Court has held that Section 1981 'was meant, by its broad terms, to proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race.'"  *Id.* at *1, quoting *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 295 (1976).

Additionally, Judge Wilson ignored – as SPLC ignores – the lineage of the cases on which he relied; a series of Eleventh Circuit cases that all trace their origins to a Florida district court opinion, *Baker v. McDonald's Corp.*, 686 F. Supp. 1474 (S.D. Fla. 1987), *aff'd without opinion*, 865 F.2d 1272 (11th Cir. 1988)(table).  *Baker*¸ however, merely cited the text of § 1981 as authority for the idea that a § 1981 plaintiff must be a racial minority.

Section 1981, of course, contains no such limitation, and the view that it does simply ignores Justice Thurgood Marshall, the author of *McDonald*, 427 U.S. 273, who thoroughly dismantled the idea that § 1981 was not colorblind:

> The question here is whether [§] 1981 prohibits racial discrimination
> in private employment against whites as well as nonwhites. . . .

---

[11] SPLC Updated *Amici Curiae* Brief, RE 36-1, Page ID # 439.

[O]ur examination of the language and history of [§] 1981 convinces us that [§] 1981 is applicable to racial discrimination in private employment against white persons. . . .

While it is, of course, true that the immediate impetus for the bill was the necessity for further relief of the constitutionally emancipated former Negro slaves, the general discussion of the scope of the bill did not circumscribe its broad language to that limited goal. On the contrary, the bill was routinely viewed, by its opponents and supporters alike, as applying to the civil rights of whites as well as nonwhites. . . .

*Id.* at 285-87, 289 (citing the extensive legislative history of 42 U.S.C. § 1981).

This Court should not credit SPLC's expected suggestion that 42 U.S.C. § 1981 does not protect the rights of White plaintiffs; rather, this Court should reiterate the legal principle that Section 1981 applies to plaintiffs of all races and does not bar Appellants' claim.

## III.  Affirmance based on Appellees' argument on the "free speech" issue would gut existing antidiscrimination civil rights laws.

Although not addressed by the district court due to its standing rationale, this Court could conceivably address arguments pressed by Appellees in the district court regarding racial discrimination being excused as free speech.[12]  We urge that the Court decline the invitation to proceed down that treacherous path.

---

[12] *See Schafer v. Multiband Corp.*, 629 F. Appx. 653, 658 (6th Cir. 2015)("we may affirm lower court judgments on alternative legal grounds not relied upon by the district court").

Appellees' arguments focused on this central proposition: "In certain circumstances, application of a civil rights law that would infringe expressive conduct must yield to the First Amendment."  Appellee Progressive's Motion to Dismiss, RE 34, Page ID # 349 (citing 303 *Creative LLC v. Elenis*, 143 S. Ct. 2298, 2314–15, 2320 (2023) and *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1256 (11th Cir. 2021)).  "Compelling Progressive to alter the eligibility criteria for the Grant Program would infringe Progressive's First Amendment right to freedom of expression.  A decision about where or to whom to donate money expresses a distinct message of support for the recipient. . . . Prohibiting an organization from making grants to only the grantees it wishes to support alters that organization's expression."  *Id*. at 17.  Progressive's argument misstates core constitutional law.

As a preliminary matter, this case is fundamentally different from *303 Creative*.  There, the Supreme Court held that antidiscrimination statutes could not be used to *compel the creation* of speech with which the speaker disagrees.  Here, the issue is whether the First Amendment *protects* racially discriminatory *conduct*. The U.S. Supreme Court already addressed this issue in *Runyon*,[13] and clearly stated that it does not.  Moreover, the Supreme Court has also ruled that not only is discriminatory conduct not protected by the First Amendment, but even some

---

[13] *Runyon v. McCrary*, 427 U.S. 160 (1976).

*speech* is afforded no First Amendment protection, in cases ranging from fighting words to defamation to true threats and in other cases. As the Supreme Court observed, "If combining speech and conduct were enough to create expressive conduct, a regulated party could always transform conduct into 'speech' simply by talking about it*." Rumsfeld v. Forum for Academic & Institutional Rights., Inc.*, 547 U.S. 47, 66 (2006).

Recognizing a "free speech" exception to unlawful discriminatory conduct would have disastrous consequences for enforcement of the civil rights laws, as EPP understands from its own experience.

For example, in July 2023, EPP filed a civil rights Complaint with the U.S. Department of Education's Office for Civil Rights ("OCR") charging New York University ("NYU") with civil rights violations for a racially discriminatory program[14] which was open only to White parents.[15]  The basis for the Complaint was that the program, as here, violated 42 U.S.C. § 1981, and also Title II of the Civil Rights Act of 1964 ("Title II"), Title VI of the Civil Rights Act of 1964

---

[14] *NYU Whites-Only "Anti-Racist" Workshop Challenged By Equal Protection Project¸* available at https://legalinsurrection.com/2023/07/nyu-whites-only-anti-racist-workshop-challenged-by-equal-protection-project/.

[15] Office of Civil Rights Administrative Complaint (hereinafter "OCR Complaint"), July 14, 2022, available at https://legalinsurrection.com/wp-content/uploads/2023/07/OCR-Complaint-New-York-University.pdf.

("Title VI"), and New York State and New York City Human Rights Laws. *See*

OCR Complaint at 1-2.

When questioned during the workshop about the reasons for having a white-

only workshop, NYU's instructor stated:

> The purpose [of the workshop] is to create space where we can talk about our racism with each other and support each other through that and hold each other accountable to show up differently and **without burdening the people of color in our lives** …. So we have to figure it out **amongst ourselves**, we have to talk about the hard things, we have to be able to say them out loud, we have to have the safety to do that without having to worry about harming people of color and … to practice anti-racist ways of being and come back to each other for support and accountability…. And it's actually so that we can **show up better in multiracial spaces**.

OCR Complaint at 1-2 (emphasis in original). This rationale did not, however,

provide a legal justification to NYU's actions, as EPP argued in its Complaint.

While this case and the NYU case are not identical, the legal principle that

needs to be vindicated is the same; a party cannot escape liability for racially

discriminatory conduct by "expressing a distinct message" in support of that

unlawful conduct.

EPP has filed numerous similar cases[16] premised on the well-established rule

that discriminatory conduct cannot evade civil rights scrutiny merely because it

---

[16] See, https://equalprotect.org/cases/.

incorporates some form of expression – a device that would render civil rights laws meaningless. This Court must not let that happen.

Indeed, one aspect of this case that Appellees appear not to have considered is the impact affirmance based on their free speech arguments will have on the very minority individuals Appellees purport to be assisting. If Appellees prevail in this argument, there would be nothing stopping another entity similar to Appellees from running an identical contractual grant program open only to entrepreneurs who are White. The result would be the growth of an entire discriminatory, Jim Crow-like nationwide regime, where discrimination against any and all individuals based on any skin color would not only be legal, but it would also likely become the norm.

In sum, this Court must reverse the district court's erroneous order that Appellants lack standing, and refrain from affirming on "free speech" grounds.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court and remand with instructions to deny Defendants' motions to dismiss.

Respectfully submitted,

*/s/ William A. Jacobson*
William A. Jacobson
Equal Protection Project of the Legal Insurrection Foundation
18 Maple Avenue 280
Barrington, Rhode Island 02806
(401) 246-4192

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), contains 3,244 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman 14-point font.

Dated:    August 26, 2024

*/s/ William A. Jacobson*
William A. Jacobson
Attorney for *Amicus Curiae*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 26, 2024, an electronic copy of the aforementioned brief was filed with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system. The undersigned also certifies that all participants are registered CM/ECF users and will be served via the CM/ECF system.

*/s/ William A. Jacobson*
William A. Jacobson