No. 24-3454

# United States Court of Appeals
# for the Sixth Circuit

NATHAN ROBERTS AND FREEDOM TRUCK DISPATCH, ON BEHALF OF THEMSELVES
AND ALL OTHERS SIMILARLY SITUATED,

*Plaintiffs-Appellants*,

v.

PROGRESSIVE PREFERRED INSURANCE COMPANY; PROGRESSIVE CASUALTY
INSURANCE COMPANY; CIRCULAR BOARD INC., ORIGINALLY NAMED AS CIRCULAR
BOARD LLC,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of Ohio, Eastern Division
Hon. Patricia A. Gaughan
No. 1:23-cv-1597

## BRIEF FOR APPELLEE CIRCULAR BOARD INC.

Neal Kumar Katyal
David M. Foster
Reedy C. Swanson
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-8872
neal.katyal@hoganlovells.com

*Counsel for Appellee Circular
Board Inc.*

October 18, 2024

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: 24-3454              Case Name: Roberts v. Progressive Preferred Ins. Co

Name of counsel:  Neal Kumar Katyal

Pursuant to 6th Cir. R. 26.1, Circular Board Inc.
                                          *Name of Party*

makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the
      identity of the parent corporation or affiliate and the relationship between it and the named
      party:

> No

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest
      in the outcome?  If yes, list the identity of such corporation and the nature of the financial
      interest:

> No

---

### CERTIFICATE OF SERVICE

I certify that on _____ October 18, 2024 _____ the foregoing document was served on all
parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not,
by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Neal Kumar Katyal

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

# TABLE OF CONTENTS

Page

DISCLOSURE OF CORPORATE AFFILIATIONS AND
FINANCIAL INTEREST ........................................................................i

TABLE OF AUTHORITIES ......................................................................iv

STATEMENT REGARDING ORAL ARGUMENT ........................................... viii

INTRODUCTION ................................................................................1

JURISDICTIONAL STATEMENT ...............................................................4

STATEMENT OF THE ISSUE ...................................................................4

STATEMENT OF THE CASE....................................................................5

    A.   Factual Background...................................................................5

    B.   Procedural History....................................................................7

SUMMARY OF THE ARGUMENT ..............................................................11

STANDARD OF REVIEW .......................................................................13

ARGUMENT ....................................................................................13

I.    PLAINTIFFS DO NOT HAVE STANDING BASED ON AN
"APPLICATION-STAGE" CONTRACT .................................................15

    A.   Even Assuming An "Application-Stage" Contract Exists,
Plaintiffs Lack Standing To Seek Damages Based On
Such A Contract ....................................................................15

    B.   There Is No "Application-Stage" Contract .........................................19

    C.   Plaintiffs' Claim For Nominal And Punitive Damages
Cannot Rescue Their Complaint .......................................................24

II.    PLAINTIFFS HAVE NOT ALLEGED THAT THEY LOST
ANY OPPORTUNITY TO COMPETE FOR THE GRANT....................26

CONCLUSION ..................................................................................32

# TABLE OF CONTENTS—Continued

Page

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

DESIGNATION OF RELEVANT LOWER COURT DOCUMENTS

# TABLE OF AUTHORITIES

Page(s)

CASES:

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*,
  727 F.3d 502 (6th Cir. 2013) ............................................................... 31

*Adarand Constructors, Inc. v. Pena*,
  515 U.S. 200 (1995) ................................................................... 14, 19

*Aiken v. Hackett*,
  281 F.3d 516 (6th Cir. 2002) ......................................................... 2, 9

*Allen v. Whitmer*,
  No. 21-1019, 2021 WL 3140318 (6th Cir. July 26, 2021) ............................... 24

*Ames v. LaRose*,
  86 F.4th 729 (6th Cir. 2023) ............................................................. 13

*Amini v. Oberlin Coll.*,
  259 F.3d 493 (6th Cir. 2001) .............................................................. 6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................. 29, 30

*Bair v. Gen. Motors. Corp.*,
  895 F.2d 1094 (6th Cir. 1990) ........................................................... 21

*Bardes v. Bush*,
  No. 23-3272, 2023 WL 9318039 (6th Cir. Dec. 4, 2023) ................................. 32

*Barner v. Mackie*,
  No. 17-1608, 2017 WL 5633399 (6th Cir. Nov. 2, 2017) ................................. 31

*Beztak Land Co. v. City of Detroit*,
  298 F.3d 559 (6th Cir. 2002) ......................................................... 28, 29

*Braunstein v. Ariz. Dep't of Transp.*,
  683 F.3d 1177 (9th Cir. 2012) ........................................................... 14

# TABLE OF AUTHORITIES—Continued

Page(s)

*Brintley v. Aeroquip Credit Union*,
   936 F.3d 489 (6th Cir. 2019) ...................................................................... 28, 30

*California v. Texas*,
   593 U.S. 659 (2021).......................................................................... 15, 21, 23

*Carlisle v. T&R Excavating, Inc.*,
   704 N.E.2d 39 (Ohio Ct. App. 1997)........................................................ 22, 23

*Carney v. Adams*,
   592 U.S. 53 (2020)............................................................ 26, 27, 30, 31

*Carroll v. Hill*,
   37 F.4th 1119 (6th Cir. 2022) .................................................................. 27, 28

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)..................................................................................... 15

*Cotter v. City of Boston*,
   323 F.3d 160 (1st Cir. 2003)...................................................................... 14

*Dibrell v. City of Knoxville*,
   984 F.3d 1156 (6th Cir. 2021) ................................................................... 25

*Domino's Pizza, Inc. v. McDonald*,
   546 U.S. 470 (2006)................................................................................... 23

*FEC v. Ted Cruz for Senate*,
   596 U.S. 289 (2022)................................................................................... 25

*Fed. Home Loan Mortg. Corp. v. Gilbert*,
   656 F. App'x 45 (6th Cir. 2016) ................................................................. 21

*Frazier v. Navistar Int'l Transp. Corp.*,
   No. 99-CA-89, 2000 WL 426162 (Ohio Ct. App. Apr. 21, 2000) ............. 21, 22

*Friends of George's, Inc. v. Mulroy*,
   108 F.4th 431 (6th Cir. 2024) ................................................................... 20

## TABLE OF AUTHORITIES—Continued

Page(s)

*Garland v. Orlans, PC*,
  999 F.3d 432 (6th Cir. 2021) ................................................................ 15, 17

*Glennborough Homeowners Ass'n v. U.S.P.S.*,
  21 F.4th 410 (6th Cir. 2021) .................................................................. 21, 25

*Goodyear Tire & Rubber Co. v. Haeger*,
  581 U.S. 101 (2017) ...................................................................................... 25

*Grahek v. City of St. Paul*,
  84 F.3d 296 (8th Cir. 1996) ........................................................................ 14

*Keys v. Humana, Inc.*,
  684 F.3d 605 (6th Cir. 2012) ...................................................................... 5, 30

*King v. Taylor*,
  694 F.3d 650 (6th Cir. 2012) ...................................................................... 13, 21

*Lake Land Emp. Grp. Of Akron, LLC v. Columber*,
  804 N.E.2d 27 (Ohio 2004) ........................................................................ 22, 23

*Lewis v. ACB Bus. Servs., Inc.*,
  135 F.3d 389 (6th Cir. 1998) ...................................................................... 19

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ...................................................................................... 1, 27

*McNamara v. City of Chicago*,
  138 F.3d 1219 (7th Cir. 1998) .................................................................... 14

*McPherson v. Kelsey*,
  125 F.3d 989 (6th Cir. 1997) ...................................................................... 21

*Murthy v. Missouri*,
  144 S. Ct. 1972 (2024) ................................................................................ 25

*Savel v. MetroHealth Sys.*,
  96 F.4th 932 (6th Cir. 2024) ...................................................................... 17, 18

# TABLE OF AUTHORITIES—Continued

Page(s)

*Spencer v. City of Hendersonville*,
No. 20-6168, 2021 WL 8016828 (6th Cir. Oct. 8, 2021) .................................. 31

*Texas v. Lesage*,
528 U.S. 18 (1999)........................................................................... 14

*Travelers Ins. Co. v. Wolfe*,
78 F.2d 78 (6th Cir. 1935) ........................................................... 21, 22

*Union Realty Co., Ltd. v. Moses*,
984 F.2d 715 (6th Cir. 1993) ............................................................. 19

*United States v. Richardson*,
418 U.S. 166 (1974)...................................................................... 31, 32

*Uzuegbunam v. Preczewski*,
141 S. Ct. 792 (2021)................................................................... 24, 25

*Yeager v. General Motors Corp.*,
265 F.3d 389 (6th Cir. 2001) ............................................................. 28

*Yeager v. Gen. Motors Corp.*,
67 F. App'x 335 (6th Cir. 2003) ........................................................ 28

STATUTES:

28 U.S.C. § 1291 ........................................................................... 4

28 U.S.C. § 1331 ........................................................................... 4

28 U.S.C. § 1343 ........................................................................... 4

42 U.S.C. § 1981(b) ....................................................................... 23

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellant Circular Board Inc. ("Hello Alice") respectfully requests oral argument given the importance of the issues involved in this case.

**INTRODUCTION**

This case illustrates the importance of Article III's limitation confining federal court jurisdiction to controversies that are "actual or imminent"—as opposed to "conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (quotation marks omitted). The defendants in this case offered ten charitable grants for Black-owned small businesses in light of the demonstrated, unique difficulties that Black business owners have experienced accessing capital. Plaintiffs assert that the grants are unlawful under 42 U.S.C. § 1981. Plaintiffs' allegations are riddled with substantial statutory and constitutional problems, such as whether a charitable grant program like the one at issue here is a "contract"; whether applying Section 1981 to charitable grants would violate the First Amendment; and whether Section 1981 even applies to a *bona fide* program designed to remedy a historical legacy of discrimination.

The District Court properly declined to reach any of those important issues on the merits because Plaintiffs' complaint suffers from a fatal threshold problem: Plaintiffs do not have standing to challenge this grant program. Plaintiffs cannot seek injunctive relief because they waited until after the grant program had concluded to bring suit, and undisputed evidence establishes no similar grant will be offered in the future. Plaintiffs also cannot seek damages based on the grant money because they never attempted to allege *any* facts to support their claim that they

would have been eligible for—much less would have received—one of the ten $25,000 grants applying only the race-neutral criteria.

On appeal, Plaintiffs do not disagree with these conclusions. Plaintiffs have abandoned their claim for injunctive relief and do not dispute that, under long-settled precedent, they lack standing to seek damages based on the grant money. *See* Opening Br. 12 & n.31, 14-16 & n.32 (citing *Aiken v. Hackett*, 281 F.3d 516 (6th Cir. 2002)). Instead, Plaintiffs pin their hopes for reversal on a convoluted theory that the grant program really constitutes two separate contracts: one formed as soon as someone submits an online application, and a second if that person is ultimately selected for a grant. According to Plaintiffs, even if they are barred from seeking damages for the second contract, they may still seek nominal damages based on the first.

This tenuous theory does not salvage Plaintiffs' standing. For starters, the District Court properly concluded that Plaintiffs did not sufficiently explain this argument below. In the District Court, Plaintiffs had banked on their claims for injunctive relief and the grant money; their brief below did not even *mention* nominal damages once. Moreover, to this day, Plaintiffs have never identified any case— ever—that has treated an application for a grant as a standalone contract, and that argument runs counter to both common sense and the weight of precedent.

Even if Plaintiffs are right about the contractual structure of the grant, however, they still have not adequately alleged standing. By Plaintiffs' own admission, if an application-stage contract exists at all, that contract is formed "at the moment a person submits his completed application." Opening Br. 1. But Plaintiffs have not alleged that the race requirement imposed any obstacle to the administrative act of submitting an application—and thus fully forming any "application-stage contract." To be sure, Plaintiffs voluntarily chose not to finish the application because they were not eligible for the *second* contract. But Plaintiffs have conceded they "cannot establish standing" to pursue damages based on the second contract for other reasons, *id.* at 21, meaning any associated loss cannot support standing for damages—even nominal damages—based on the *first* contract.

Finally, there is yet another basis for dismissing this complaint even if Plaintiffs are correct that nominal damages might theoretically be available for the alleged application-stage contract: Across two complaints, Plaintiffs have failed to allege any facts supporting their claim that they were eligible to compete for the grant based on the applicable race-*neutral* criteria. Under black-letter pleading law, that is insufficient to support Plaintiffs' barebones claim that they were able to apply for the grant in the first place.

From the very beginning of this case, Plaintiffs have skirted their obligation to establish a genuine controversy. The District Court properly refused to exercise

3

jurisdiction over the thorny legal issues in this case absent sufficient allegations that Plaintiffs had a genuine, personal stake in the challenged grant program.  This Court should affirm.

## JURISDICTIONAL STATEMENT

Plaintiffs invoked the District Court's subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.  First Am. Compl. ("FAC") ¶ 1, R. 32, PageID #263.  The District Court correctly concluded that it lacked jurisdiction over this case because Plaintiffs lack Article III standing.  *See* Mem. of Op. and Order ("Op."), R. 51, PageID #613-624.

This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether the District Court correctly concluded that Plaintiffs failed to sufficiently plead standing to pursue damages based on a charitable grant absent any allegations that Plaintiffs would have received—or were even eligible for—that grant based on the applicable race-neutral criteria.

## STATEMENT OF THE CASE

### A.    Factual Background[1]

Appellee Hello Alice—formally, Circular Board Inc.—is an online resource platform that, among other things, facilitates providing grants to small businesses. *See* FAC ¶ 8, R. 32, PageID #263.  Its programs have helped "over one million small businesses access capital."  FAC Ex. 4, R. 32-4, PageID #288.  Hello Alice "awards grants to small business owners of all backgrounds and ethnicities" as part of its commitment to "equitable access to capital" for all people, including "women, people of color, members of the LGBTQ+ community, veterans, and entrepreneurs with disabilities."  *Id.* at PageID #289-290.

In May 2023, Hello Alice partnered with the Progressive appellees (collectively, "Progressive") to offer ten grants of up to $25,000 each for "Black-owned small businesses to use toward the purchase of a commercial vehicle."  FAC ¶¶ 11-12, R. 32, PageID #264.  The grant program's goal was "to alleviate [the] challenge" resulting from demonstrated "inequities" that "have made it harder for Black entrepreneurs to access capital."  FAC Ex. 3, R. 32-3, PageID #280.  For example, one study by McKinsey & Company—cited in the grant's press materials—found that although "20 percent of Black Americans start businesses,

---

[1] Solely for purposes of this appeal arising from a Rule 12(b)(1) motion, Hello Alice treats the well-pleaded allegations in the complaint as true.  *See Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).

only four percent of these businesses survive the startup stage due in large part to the difficulty Black business owners have in accessing financing."  FAC Ex. 4, R. 32-4, PageID #288.

The grant program had multiple additional eligibility requirements unrelated to race.  *See* FAC ¶ 18, R. 32, PageID #265.  Applicants had to "meet *all* of [these] criteria to be eligible for" the grant.  *Id.* (quoting FAC Ex. 3, R. 32-3, PageID #281) (emphasis added).  *First*, applicants had to have 10 or fewer employees.  *Id.  Second*, applicants had to have less than $5 million in annual gross revenue.  *Id.  Third*, applicants had to articulate "a demonstrated need for a qualifying commercial vehicle."  *Id.*  "Heavy trucks" and other large vehicles were "not considered qualifying commercial vehicles."  Grant Terms, R. 35-1, PageID #394.[2]  *Fourth*, applicants had to present "a clear plan for growth as a result of this vehicle purchase."  FAC ¶ 18, R. 32, PageID #265 (quoting FAC Ex. 3, R. 32-3, PageID #281).  *Fifth*, applicants could not be "an independent contractor whose primary business is for a rideshare service . . . or third-party food delivery."  *Id.*  The grant's terms and conditions required applicants to "acknowledge[] that [Hello Alice] will collect private or personal data" during the application process and may share that

---

[2] Plaintiffs have not disputed that the Court may consider the text of the grant's terms even though the document was not attached to the complaint because those terms are incorporated by reference into the complaint via hyperlink.  *See* FAC ¶ 19, R. 32, PageID #265; *see Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).

information with Progressive or use it for promotional purposes. Grant Terms, R. 35-1, PageID #399; *see also* FAC ¶ 21, R. 32, PageID #266.

Plaintiff Nathan Roberts, a Caucasian man, is the sole owner and member of Plaintiff Freedom Truck Dispatch LLC. FAC ¶¶ 10, 28, R. 32, PageID #264, 267. Roberts received an email on May 23, 2023, describing the grant and "began filling out the application, but when he "came to [the] part of the application that made clear that the grants were available only to black-owned businesses," he "closed the application" and did not finish applying. *Id.* ¶¶ 26-28, PageID #267. Instead, within one day of receiving the email, Roberts forwarded it to counsel at the America First Legal Foundation. *See* FAC Ex. 1, R. 32-1, PageID #273.

The very same email advertised a second grant—open to "small business owners of all backgrounds"—offering an "opportunity to receive a $5,000 to $25,000 grant." *Id.* at PageID #274. Plaintiffs do not allege that they ever applied for this grant.

## B.    Procedural History

Although the application window for the grant program closed on June 2, 2023, *see* FAC Ex. 3, R. 32-3, PageID #280, Plaintiffs did not file suit against Hello Alice and Progressive until August 16, 2023, *see* Compl., R. 1, PageID #7. Plaintiffs sought to represent a class of potential applicants for the grant, and alleged that the grant terms violated 42 U.S.C. § 1981 by "engaging in racial discrimination in the

marking and enforcement of contracts." *Id.* ¶¶ 26, 35, PageID #5-6. Plaintiffs sought both injunctive relief and damages. *Id.* ¶ 39, PageID #6-7. Their original complaint did not include any allegation that the grant program constituted two separate contracts. *See generally id.* at PageID #1-7.

Hello Alice and Progressive moved to dismiss, arguing among other things that Plaintiffs lacked standing. They noted that the grants had multiple eligibility criteria unrelated to race, and that Plaintiffs had not alleged that they satisfied *any* of those additional criteria—much less that they would actually have received one of the ten grants but for the Black-owned business requirement. *See* Hello Alice Mot. to Dismiss, R. 15, PageID #124-127; Progressive Mot. to Dismiss, R. 19, PageID #170-175.

Plaintiffs responded by filing an amended complaint, which introduced their theory that the grant program was really "two, sequential contractual agreements." FAC, R. 32, PageID #262. This time, Plaintiffs acknowledged the race-neutral eligibility criteria and asserted in a single sentence that they "satisfied" those criteria, without including any additional facts explaining why those criteria were satisfied. *Id.* ¶ 31, PageID #267. Plaintiffs also added a new allegation "[on] information and belief" with no supporting facts that Hello Alice and Progressive were willing to disregard all of the eligibility criteria *other* than the Black-owned requirement. *Id.* ¶ 20, PageID #266.

Hello Alice and Progressive again moved to dismiss, and the District Court granted the motions on standing grounds. Op., R. 51, PageID #609-610.[3] The court recognized that, under *Aiken*, if "plaintiffs allege that a racial preference cost them some benefit," those plaintiffs must "allege and show that 'under a race-neutral policy' they would have received the benefit" to allege standing for a damages claim. Op., R. 51, PageID #616 (quoting *Aiken*, 281 F.3d at 519). As Plaintiffs concede, "the district court correctly observed that [Plaintiffs] had never alleged that they would have obtained one of the $25,000 grants in the absence of" the Black-owned business requirement. Opening Br. 12 (citing Op., R. 51, PageID #617-620).

The District Court noted that Plaintiffs had suggested they might have standing to seek damages based on "their inability to compete," but observed that they had "not explained" that theory. Op., R. 51, PageID #619. Similarly, Plaintiffs "contend[ed], without citing any authority, that the [grant was] comprised of two distinct contracts" but had "not offered any legitimate reason as to how this issue . . . has any impact on the issue of standing." *Id.* at PageID #615 n.4.

---

[3] Hello Alice raised additional defenses under the Federal Arbitration Act, the federal venue statute, the scope of Section 1981, and the First Amendment. Because the District Court did not reach those issues, Hello Alice does not raise them on appeal, but Hello Alice preserves each of those arguments should this Court agree with Plaintiffs that a remand is necessary.

9

The court also explained that Plaintiffs' standing argument was incompatible with basic principles of compensatory damages, because "[a]warding compensatory damages to plaintiffs for their inability to compete for a benefit that they would not have otherwise received would put those plaintiffs in a better position than had the discrimination not occurred." Op., R. 51, PageID #620. In some cases, the court noted, applying *Aiken* might involve a "fact intensive" issue difficult to resolve "on a motion to dismiss." *Id.* at PageID #619 n.9. Here, however, Plaintiffs had not even attempted to allege that they would have been competitive for the grant. *See id.*

Even where a plaintiff lacks standing for damages, the District Court continued, she might still seek *prospective* relief allowing her "to compete on equal footing" by "remov[ing] the barrier." *Id.* at PageID #620. But Plaintiffs here did "not allege any risk of present harm" or any risk that the alleged injury would recur "in the reasonably foreseeable future" because they waited until months after the application window for the grant had closed to file suit. *Id.* at PageID #621.

Plaintiffs likewise did not allege any facts indicating that a similar grant would be offered in the future. *See id.* On the contrary, an unchallenged declaration explained that Progressive "does not plan to offer a grant with race-based eligibility criteria in the future." *Id.* And although Plaintiffs pointed to other grant programs Hello Alice had offered in other states, the District Court explained they "cannot be

10

'able and ready' to apply for a grant that they were not eligible for even without a race-based eligibility requirement." *Id.* at PageID #623.

In short, Plaintiffs did not attempt to satisfy the legal standard for seeking damages, and could not pursue prospective relief for "the now-closed 2023 Grant" or "unnamed, hypothetical future grants." *Id.* at PageID #621, 624. The court lacked jurisdiction to address Plaintiffs' "generalized grievance about Defendants' programs." *Id.* at PageID #623. Accordingly, the court dismissed the complaint without reaching any of the remaining issues. *Id.* at PageID #625. Plaintiffs timely appealed. Notice of Appeal, R. 53, PageID #627.

## SUMMARY OF THE ARGUMENT

I. For three separate reasons, Plaintiffs cannot split the grant program into two separate contracts and rely on an "application-stage" contract to establish standing.

*First*, assuming Plaintiffs are correct that the grant program consists of two separate contracts, Plaintiffs admit that the "application-stage" contract would have been fully "formed at the moment a person submits his completed application." Opening Br. 1; *see also id.* at 12. But there was no race-related obstacle to Plaintiffs completing the act of submitting an application. Plaintiffs therefore lack standing to assert an independent damages claim based solely on a supposed "application-stage" contract.

*Second*, there is no "application-stage" contract.  Plaintiffs have not supported this claim with any reference to contract law, here or in the District Court.  On the contrary, this Court and Ohio law have long recognized that an application is not a contract, and Plaintiffs' theory results in an incoherent understanding of the grant program where the *second* alleged contract—the final grant—is unsupported by any alleged consideration.

*Third*, the District Court did not abuse its discretion in holding that Plaintiffs failed to sufficiently develop this argument by failing to explain how their two-contracts theory would support standing.  Their new appellate argument that nominal damages would redress their injury appears nowhere in their briefing below.  And, in any event, neither nominal nor punitive damages resolve Plaintiffs' failure to adequately allege injury-in-fact or traceability.

II.  Even if Plaintiffs could theoretically assert a claim for damages based solely on a lost opportunity to compete, they would still need to plausibly allege that they had such an opportunity in the first place.  Plaintiffs have utterly failed to satisfy that requirement, because they have never alleged *any* facts to support their conclusory assertion that they were eligible for the grant based solely on the race-neutral criteria.  Instead, Plaintiffs added an "information and belief" allegation that Hello Alice and Progressive would simply have ignored those criteria.  That unsupported and wholly implausible allegation must be disregarded under this

12

Court's longstanding precedent. Plaintiffs' failure to satisfy this basic pleading requirement—even though all the relevant facts are entirely within their control—only confirms that this case involves no justiciable, particularized controversy.

## STANDARD OF REVIEW

This Court reviews dismissal for lack of standing under Rule 12(b)(1) *de novo* where, as here, there are no relevant factual disputes. *See Ames v. LaRose*, 86 F.4th 729, 731 (6th Cir. 2023). It reviews a "district court's ruling" that an argument has been forfeited "for an abuse of discretion." *King v. Taylor*, 694 F.3d 650, 659 (6th Cir. 2012).

## ARGUMENT

Plaintiffs have substantially shifted their arguments on appeal, and in so doing have effectively conceded away their case. Gone are the primary bases on which they urged the District Court to find that they had standing: injunctive relief and the $25,000 grant. *See* Pls.' Resp. to Defs.' Mots. to Dismiss FAC, R. 43, PageID #514-519. In their place, Plaintiffs assert that they can secure nominal damages for a supposed lost opportunity to submit an application for a grant, regardless of whether they were eligible for or would have received that grant.

Plaintiffs' latest gambit is too clever by half. This new "application-stage" theory of standing has no connection to the alleged race requirement for the $25,000 grant, has no support in contract law, and was woefully underdeveloped below.

13

Finally, even if Plaintiffs could overcome all of these obstacles, they would still fail to sufficiently allege standing because they have never alleged *any* facts supporting their barebones assertion that they were "eligible" for the grant under the race-neutral criteria.

None of this should be taken to suggest that Article III poses an insuperable obstacle to suit in a mine-run case. The problems with this suit are attributable to Plaintiffs' unorthodox litigation choices: waiting until after the grant application period closed to file suit; refusing to include basic factual allegations in their complaint; and refusing to press the arguments that they actually developed below on appeal.[4] The important issues that this case implicates on the merits should await decision in a case where they make a concrete difference to the party bringing suit.

---

[4] Plaintiffs suggest that the real purpose behind these strategic choices is to manufacture a vehicle to challenge this Court's standing precedent en banc or in the Supreme Court. *See* Opening Br. 15 n.32. This Court's approach to standing for damages claims, however, is widely shared and well-grounded in both Supreme Court precedent and first principles. *See* Op., R. 51, PageID #616-620 & n.8; *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 210-211 (1995) (plurality op.); *Texas v. Lesage*, 528 U.S. 18, 21 (1999) (per curiam); *Cotter v. City of Boston*, 323 F.3d 160, 167 (1st Cir. 2003); *McNamara v. City of Chicago*, 138 F.3d 1219, 1221 (7th Cir. 1998) (Posner, J.); *Grahek v. City of St. Paul*, 84 F.3d 296, 299 (8th Cir. 1996); *Braunstein v. Ariz. Dep't of Transp.*, 683 F.3d 1177, 1185 (9th Cir. 2012). But it should come as no surprise that Plaintiffs' panel-stage arguments are underdeveloped in light of their apparent strategic end-game.

I.    **PLAINTIFFS DO NOT HAVE STANDING BASED ON AN "APPLICATION-STAGE" CONTRACT.**

A.    **Even Assuming An "Application-Stage" Contract Exists, Plaintiffs Lack Standing To Seek Damages Based On Such A Contract.**

"A plaintiff has standing only if he can allege personal injury fairly traceable to the defendant's allegedly unlawful conduct . . . ."  *California v. Texas*, 593 U.S. 659, 668-669 (2021) (quotation marks omitted).  Even assuming, for the moment, an "application-stage" contract could be deemed to exist, Plaintiffs have alleged no cognizable injury based on that contract that is "'fairly traceable' to the 'allegedly unlawful conduct' of which they complain." *Id.* at 669.  Plaintiffs identify only two potential injuries based on the alleged application-stage contract: "submitting [an] application" and "having [themselves] considered for a grant."  Opening Br. 16.  On the facts Plaintiffs have alleged, even granting the dubious premise that both these injuries are constitutionally cognizable, neither is fairly attributable to the actions of Hello Alice or Progressive.

To the extent that merely "submitting an application" is a constitutionally cognizable interest at all, Plaintiffs' lost opportunity in doing so is self-inflicted. *See Garland v. Orlans, PC*, 999 F.3d 432, 441 (6th Cir. 2021) ("Self-inflicted injuries fail under [the traceability] prong [for Article III standing] because they are, by definition, not traceable to anyone but the plaintiff." (quotation marks and alterations omitted)); *accord Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) (parties

"cannot manufacture standing merely by inflicting harm on themselves"). The grant program at issue here involved no race-based obstacle to the ministerial act of *submitting* an application. On the contrary, Plaintiffs admit that they chose to stop the application process before pushing the submit button. FAC ¶ 28, R. 32, PageID #267.

In response, Plaintiffs gesture at futility principles, arguing that they "would have obtained the contract that was offered at the *application* stage had the defendants not limited this application-stage contract to blacks and black-owned businesses." Opening Br. 17-18. But this gives away the game, as it conflates Plaintiffs' two alleged contracts. Nothing prevented businesses owned by people of other races from the act of submitting an application. *See* FAC ¶ 18, R. 32, PageID #265; Grant Terms, R. 35-1, PageID #393-399. To use Plaintiffs' terms, only the *second* contract was "limited . . . to blacks and black-owned businesses." Opening Br. 17-18. Plaintiffs were free to form any application-stage contract that existed. Plaintiffs therefore cannot pursue standalone damages solely based on their own failure to "submit[] [an] application." *Id.* at 16.

As Plaintiffs have constructed their appellate argument, it makes no difference that the *second* contract—the $25,000 grant—was limited to Black-owned businesses. FAC ¶ 18, R. 32, PageID #265. Even if Plaintiffs had a reasonable argument that applying would have been futile for purposes of asserting a claim for

damages based on the second contract, Plaintiffs now concede they lack standing to pursue that claim for other reasons. Opening Br. 12, 21. Because Plaintiffs are pursuing damages based on the alleged application-stage contract "alone," *id.* at 13, they must reckon with the fact that submitting an application would not have been futile for forming this alleged application-stage contract. On the contrary, Plaintiffs have admitted that they "would have obtained the application-stage contract . . . *at the moment* [their] application [was] submitted." *Id.* at 12 (emphasis altered).

Plaintiffs also claim that they lost out on the opportunity of "having [the business] considered for a grant." *Id.* at 16. This injury is not cognizable under Circuit precedent. At its core, this allegation is nothing more than a claim of "emotional harm" based on the fact that no one at Hello Alice or Progressive looked at their application before rejecting it. *Garland*, 999 F.3d at 439. That is the only way that this claim could be truly *independent* of a damages claim based on the grant itself. This Court has made clear that the such a slight "emotional harm" is not a cognizable Article III injury at all. *See id.* at 439-440 (holding that "[s]omeone who feels slightly nervous has not suffered the type of severe emotional harm cognizable at common law"); *Savel v. MetroHealth Sys.*, 96 F.4th 932, 939-940 (6th Cir. 2024)

17

(holding "retrospective distress" was not cognizable where plaintiffs temporarily believed they would not be granted exemption from vaccination requirement).

Even if an independent "consideration" injury—divorced from the underlying chance of winning money—is cognizable, it suffers the same traceability problem as the alleged submission injury: Plaintiffs' application was not considered because they never submitted it. Had Plaintiffs pushed the submit button, they would have been considered for the grant before they were rejected. Plaintiffs also assert that the "value of [a] lost opportunity to compete" for the grant "is not zero . . . because the chance of obtaining $25,000 has value even if the probability . . . is small." Opening Br. 23. But, as the quoted language makes clear, that supposed financial injury derives entirely from what Plaintiffs have styled as the second contract—the final grant—and Plaintiffs *concede* they lack standing to pursue any damages based on that contract. *Id.* at 12, 14, 21.

If all of this feels a bit formal, that is the result of the Plaintiffs' choice to try to dodge controlling Circuit precedent by treating the grant program as two independent contracts. Having made that strategic choice, Plaintiffs cannot avoid the implications for Article III standing. *See Savel*, 96 F.4th at 940 ("a person cannot manufacture a case or controversy by acting of their own accord and then blaming someone else for the fallout"). Plaintiffs appear to recognize that they face an uphill climb; remarkably, Plaintiffs' entire argument on this front contains *no* citations to

18

any legal authority, from any court anywhere, supporting their position.  *See* Opening Br. 14-21.  Excluding the footnote previewing their strategy beyond the panel stage, Plaintiffs cite just two cases across these seven pages of their brief:  (1) *Aiken*, the case they concede forecloses their damages claim with respect to the final grant; and (2) *Adarand*, which merely confirms that Plaintiffs have standing to seek damages when they allege that they "*lost* a contract in the past because of " the defendants' conduct.  515 U.S. at 210 (emphasis added).

To the extent there *is* a first contract with cognizable benefits independent of the ultimate grant, Plaintiffs' own decision not to apply caused any associated injuries, not any actions of Hello Alice or Progressive.  Plaintiffs therefore cannot seek damages based solely on any application-stage contract.

### B.    There Is No "Application-Stage" Contract.

There is a simple explanation for why Plaintiffs' standing arguments based on the supposed "application-stage" contract create such logical problems:  There *is no* application-stage contract; it is fiction, pure and simple.  The grant's terms and conditions are a single document that—at most—form a *single* contract.  *See* Grant Terms, R. 35-1, PageID #393-399.  Whether Plaintiffs have sufficiently alleged the existence of two separate contracts is a legal conclusion that the Court need not accept as true for purposes of a Rule 12 motion.  *See Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998); *Union Realty Co., Ltd. v. Moses*, 984 F.2d 715,

720 n.5 (6th Cir. 1993). Plaintiffs cannot sidestep precedent that they admit is controlling through a baseless argument to split the grant terms into two independent contracts.[5]

Plaintiffs have never cited any contract law precedent, from Ohio or anywhere else,[6] finding an application to form a second contract sufficient to be deemed an *independent* contract on its own. Hello Alice pointed out the lack of precedent in their opening brief in the District Court. *See* Hello Alice Mot. to Dismiss FAC, R. 35, PageID #376. Plaintiffs' brief in opposition cited nothing in response, *see* Pls.' Resp. to Defs.' Mots. to Dismiss FAC, R. 43, PageID #514-522, leading the District Court to correctly point out that Plaintiffs advanced this two-contract theory "without citing any authority." Op., R. 51, PageID #615 n.4. Plaintiffs' block quote from their lower court brief, Opening Br. 20, only proves the point: It shows that

_____

[5] In the District Court, Hello Alice and Progressive argued that the grant program is not a contract at all. Hello Alice preserves that argument should a remand occur, but this Court need not reach it to resolve Plaintiffs' standing arguments—particularly as no party has briefed that issue on appeal. Given how Plaintiffs have structured their appeal, however, whether the program constitutes two separate contracts is one of those issues that is "part of the standing analysis" but "inevitably bleeds into the merits a bit." *Friends of George's, Inc. v. Mulroy*, 108 F.4th 431, 438 n.4 (6th Cir. 2024).

[6] The parties agreed below that the grant's terms and conditions are governed by Ohio law. *See* Hello Alice Mot. to Dismiss FAC, R. 35, PageID #378 & n.4; Progressive Mot. to Dismiss FAC, R. 34, PageID #346; Pls.' Resp. to Defs.' Mots. to Dismiss FAC, R. 43, PageID #520.

they *asserted* their two-contract theory, but not that they developed it with any meaningful citation to legal authority.

Plaintiffs' appellate brief fails to fill in the gap, citing no contract cases *at all*. That alone should suffice to dispose of Plaintiffs' two-contract claim:  "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) (quotation marks and alteration omitted).  "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *Id.* at 995-996 (quotation marks and alterations omitted). Particularly given Plaintiffs' citation-free briefing on this issue in this Court, the District Court did not abuse its discretion in concluding that Plaintiffs failed to sufficiently develop this argument below. *See King*, 694 F.3d at 659; *Glennborough Homeowners Ass'n v. U.S.P.S.*, 21 F.4th 410, 414 (6th Cir. 2021) ("a party can forfeit its argument for why it *has* standing to sue") (citing *California*, 593 U.S. at 674).

It is not surprising that Plaintiffs can cite no support for their theory:  Under Ohio law, as elsewhere, an application is not a contract.  *See Frazier v. Navistar Int'l Transp. Corp.*, No. 99-CA-89, 2000 WL 426162, at *3-4 (Ohio Ct. App. Apr. 21, 2000) (citing *Bair v. Gen. Motors. Corp.*, 895 F.2d 1094, 1097-98 (6th Cir. 1990)); *accord Fed. Home Loan Mortg. Corp. v. Gilbert*, 656 F. App'x 45, 47 (6th Cir. 2016) ("Now, as ever, an 'application when made is not a contract.'" (quoting *Travelers*

21

*Ins. Co. v. Wolfe*, 78 F.2d 78, 81 (6th Cir. 1935)). The mere fact that Plaintiffs must "acknowledge[]" that Hello Alice and Progressive may use the data they submit in their application for promotional purposes, Grant Terms, R. 35-1, PageID #399, does not signal that the parties "intend[ed] to conclude any bargain" before Hello Alice and Progressive "made further determinations as to which [applicants] would be accepted." *Frazier*, 2000 WL 426162, at *4.

Indeed, adopting Plaintiffs' own description of the "two contracts," the supposed "second contract"—the final grant—would lack any alleged consideration. Under Ohio law, every contract must be supported by its own, independent consideration; "past consideration" for a previous contract "cannot be a bargained-for benefit or detriment, since it has already occurred or accrued." *Carlisle v. T&R Excavating, Inc.*, 704 N.E.2d 39, 44 (Ohio Ct. App. 1997). Thus, to establish a second contract, Plaintiffs would need to point to an additional "detriment to the promisee" or "benefit to the promisor." *Lake Land Emp. Grp. of Akron, LLC v. Columber*, 804 N.E.2d 27, 32 (Ohio 2004).

Here, Plaintiffs do not allege that the $25,000 grant imposes any "detriment" on themselves, and the only alleged benefit to Hello Alice or Progressive is the ability to use Plaintiffs' data for promotional purposes, *see* Opening Br. 16, which occurs in connection with the supposed first contract. There is no *additional* consideration even alleged for the second contract.

Plaintiffs point to the requirement that "the grant recipient . . . use the $25,000 that it receives toward the purchase of a qualifying commercial vehicle," *id.* at 1, 17, but that is merely a condition that Hello Alice and Progressive impose on the grant money, not a benefit to Hello Alice or a detriment to Plaintiffs. *See Carlisle*, 704 N.E.2d at 45 & n.1 (noting that imposing conditions does not suffice to establish consideration). Plaintiffs have therefore failed to even allege any additional "detriment to the promisee" or "benefit to the promisor" implicated by their supposed second contract, as they must to establish consideration. *Columber*, 804 N.E.2d at 32; *see also Carlisle*, 704 N.E.2d at 43 (noting that "[w]hether there is consideration at all" is a legal issue "for a court" to decide).[7]

All of this confirms that the grant program here is, *at most*, a single contract. And, because Plaintiffs' sole theory of standing on appeal depends on their legal position that the program is really *two* contracts, *see* Opening Br. 14-21, their failure to support that theory with any legal precedent dooms their claim to standing. *See California*, 593 U.S. at 674.

---

[7] For this reason, accepting Plaintiffs' view of the contractual structure would doom their claim on the merits, because the Black-owned business requirement applied only to the final grant, and "[a]ny claim brought under § 1981" must identify a "contractual relationship" impaired by racial discrimination. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) (quoting 42 U.S.C. § 1981(b)).

**C.    Plaintiffs' Claim For Nominal And Punitive Damages Cannot Rescue Their Complaint.**

In light of all this, Plaintiffs' extended discussion of nominal and punitive damages is a red herring.  At most, nominal damages could solve a redressability problem.  Plaintiffs' problem, however, is that they have not satisfied the first two elements of standing: a cognizable injury in fact that is traceable to the defendants' conduct.  *See supra* pp. 15-23; *infra* pp. 26-32.  Until they have satisfied both those antecedent elements, the question of redressability is beside the point.  *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021) (noting "a request for nominal damages" does not "guarantee[] entry to court" because it "concerns only redressability"); *Allen v. Whitmer*, No. 21-1019, 2021 WL 3140318, at *2 (6th Cir. July 26, 2021) (noting Plaintiffs cannot rely on nominal damages to satisfy injury-in-fact or traceability).

In any event, the District Court was right to point out that Plaintiffs entirely failed to explain how nominal damages could support their theory of standing below.  *See* Op., R. 51, PageID #619 ("Plaintiffs have not explained how compensatory damages would redress their inability to compete for a grant they do not allege they would have received.").  This is part and parcel of Plaintiffs' failure to offer "any legitimate reason as to how" their two-contracts theory related to "the issue of standing."  *Id.* at PageID #615 n.4.  Indeed, the words "nominal" and "punitive damages" appear *nowhere* in their opposition to the motions to dismiss.  *See* Pls.'

Resp. to Defs.' Mots. to Dismiss FAC, R. 43, PageID #514-519.  The District Court can hardly be faulted for failing to put all the pieces of Plaintiffs' theory together for them.  *See Murthy v. Missouri*, 144 S. Ct. 1972, 1991 n.7 (2024) ("judges are not like pigs, hunting for truffles buried in the record" (quotation marks and alterations omitted)); *accord Dibrell v. City of Knoxville*, 984 F.3d 1156, 1163 (6th Cir. 2021) (same).    And because arguments in favor of standing may be forfeited, *Glennborough Homeowners Ass'n*, 21 F.4th at 414, Plaintiffs' failure to develop their argument on redressability provides still another basis for affirming the District Court.

Plaintiffs' claim that punitive damages can independently satisfy the redressability prong of the standing inquiry suffers from an additional flaw.  Punitive damages do not "redress" an injury at all; they simply inflict punishment on a defendant.  *See Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017) (noting "compensatory" sanctions are those calculated "to redress the wronged party" and distinguishing "punitive sanctions").  Like attorneys' fees and costs, they are nothing more than "a 'byproduct' of a suit that already succeeded, not a form of redressability," and thus "cannot establish standing" independently.  *Uzuegbunam*, 141 S. Ct. at 801.  Tellingly, Plaintiffs do not cite any cases that have ever held that punitive damages satisfy the redressability requirement for Article III standing.  *See* Opening Br. 22-23 (citing only *FEC v. Ted Cruz for Senate*, 596 U.S. 289 (2022), a

case that does not discuss either nominal or punitive damages at all).  But, even if punitive damages could establish redressability, they do not help the Plaintiffs here for all the same reasons as nominal damages: Plaintiffs failed to preserve this argument below and it does not resolve Plaintiffs' failure to adequately allege injury-in-fact or traceability.

## II.    PLAINTIFFS HAVE NOT ALLEGED THAT THEY LOST ANY OPPORTUNITY TO COMPETE FOR THE GRANT.

Plaintiffs' attempt to allege standing based on a supposed lost opportunity of "having itself considered for a grant," Opening Br. 16, fails for still another reason: Plaintiffs have never alleged *any* facts to support their conclusory assertion that they "satisfied" the race-neutral eligibility criteria in the first place.  FAC ¶ 31, R. 32, PageID #267.  Under both Supreme Court and Sixth Circuit precedent, that is an additional and independent barrier to suit.  Notably, this omission would be fatal even in a case seeking injunctive relief—meaning this failure would doom Plaintiffs' complaint *even if* this Court applied the same standing doctrine in damages and injunctive-relief actions.   *See* Opening Br. 15 n.32; *supra* n.4.

In *Carney v. Adams*, 592 U.S. 53 (2020), the Supreme Court confronted a similar claim to standing based on the supposed inability to have an application "considered."  There, the plaintiff claimed that a Delaware electoral rule favoring major parties "prevent[ed] him, a political independent, from having his judicial application considered for three of Delaware's courts."  *Id.* at 60.  Like Plaintiffs

here, the plaintiff in *Carney* claimed that he was "'able and ready' to apply" but for the challenged rule. *See id.* (citation omitted); *accord* FAC ¶ 29, R. 32, PageID #267. The Court rejected that claim as a matter of law, holding that the plaintiff's pattern of failing to apply for judgeships in the past meant he had not provided a sufficient evidentiary basis for a reasonable jury to conclude that he had an "actual desire to become a judge." *Carney*, 592 U.S. at 61-64. The Court recognized that treating a "few words of general intent," "without more and against all contrary evidence" as sufficient to establish standing "would significantly weaken the longstanding legal doctrine preventing [courts] from providing advisory opinions." *Id.* at 64.

This Court has repeatedly applied these principles—including at the pleading stage—reflecting the general rule that each element of standing "must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. As the Court explained in *Carroll v. Hill*, "[i]f a plaintiff lacks the ability to take advantage of an opportunity, the deprivation of that opportunity does not count as an injury under Article III" sufficient to establish standing. 37 F.4th 1119, 1122 (6th Cir. 2022). In *Carroll*, that meant that a plaintiff claiming she had been "swindled . . . out of [her] inheritance" lacked standing to sue because—even without the alleged misconduct—the plaintiff "would not have been eligible to contest" the relevant will.

27

*Id.* at 1121. Similarly, in *Brintley v. Aeroquip Credit Union*, the Court recognized that a blind plaintiff lacked standing to sue a credit union for failing to maintain an accessible website where the plaintiff was ineligible for the services advertised and had not articulated any "concrete plans" for making herself eligible. 936 F.3d 489, 492 (6th Cir. 2019).

These principles apply with equal force in the context of "affirmative action" or "reverse discrimination" suits. In *Yeager v. General Motors Corp.*, the Court explained that to establish standing "in the context of affirmative action programs, the challenger" must "show that, but for the program, he would have been considered for the" disputed program. 265 F.3d 389, 395 (6th Cir. 2001) (*Yeager I*) (quotation marks omitted). The Court thus held that a candidate for an apprenticeship could not trace any injury to an affirmative action program that adjusted scores for racial minorities upward where more candidates with *unadjusted* scores than positions available outranked the plaintiff. *Id.* Thus, the plaintiff had failed to show that he would have been considered for an apprenticeship regardless of the affirmative action program. *See id.; accord Yeager v. Gen. Motors Corp.*, 67 F. App'x 335, 338 (6th Cir. 2003) (per curiam) (rejecting the "plaintiffs' attempts to rearticulate the claim [in *Yeager I*] in a different form"). The Court reached a similar conclusion in *Beztak Land Co. v. City of Detroit*, holding that a company lacked standing "to assert claims for violations of its constitutional rights that are based upon the City's

procedure for selecting casino developers" where the company did not intend "to develop [or] operate a casino."  298 F.3d 559, 567-568 (6th Cir. 2002).[8]

The District Court did not reach this argument in its retrospective standing analysis because it did not need to.  *See* Op., R. 51, PageID #624 n.12.  It confirmed the general legal principle, however, in its analysis of prospective standing—which Plaintiffs did not appeal.  There, the Court noted that Plaintiffs could not rely on out-of-state grants because "Plaintiffs cannot be 'able and ready' to apply for a grant that they were not eligible for even without a race-based eligibility requirement."  *Id.* at PageID #623.

The same problem dooms Plaintiffs' claim based on the grant at issue here. Plaintiffs here failed to allege any facts to support the "naked assertion" that they satisfied the race neutral eligibility criteria here.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and alteration omitted).  Instead, Plaintiffs asserted in a single sentence that they "satisfied" the race-neutral criteria.  FAC ¶ 31, R. 32, PageID #267.  But the relevant criteria in this case were not a box-checking exercise: They required detailed information about Plaintiffs' business, including the number of employees and annual revenue figures; their "demonstrated need for" and "clear

---

[8] The Court has treated the issue of eligibility under non-discriminatory rules as affecting both injury-in-fact—*i.e.*, whether the Plaintiff really suffered any loss—and traceability—*i.e.*, whether any loss was a result of the defendant's conduct.  The result is the same using either analytical lens.

plan for growth" based on the commercial vehicle to be purchased using the grant; or even the basic nature of their business. *See id.* ¶ 18, PageID #265.

Plaintiffs' one-sentence—really, one *word*—claim that they "satisfied" these detailed criteria does not amount to the kind of "sufficient 'factual content'" required to render their conclusory assertion of eligibility plausible. *Keys*, 684 F.3d at 610 (quoting *Iqbal*, 556 U.S. at 678). On the contrary, Plaintiffs are attempting to rely on just a "few words of general intent"—the very approach that the Supreme Court rejected in *Carney*. 592 U.S. at 64. This Court has "no authority to imagine the dots that [Plaintiffs] might one day connect to" establish standing—particularly where, as here, all the relevant facts are entirely within Plaintiffs' possession. *Brintley*, 963 F.3d at 492.

It is telling that, after defendants pointed out this gap in Plaintiffs' original complaint, Plaintiffs did not even attempt to add any factual allegations to support their claim to eligibility. Instead, Plaintiffs' amended complaint inserted a new "information and belief" allegation that Hello Alice and Progressive would simply ignore all the race-neutral eligibility criteria. FAC ¶ 20, R. 32, PageID #266. Plaintiffs fail to allege *any* facts consistent with that allegation; on the contrary the complaint and exhibits render it fundamentally implausible. For instance, the grant's promotional materials are shot through with support for "small business owners," *see, e.g.*, FAC Ex. 1, R. 32-1, PageID #273-274; it makes no sense that defendants

30

would have chosen to disregard that commitment and instead given the grants to large businesses instead. And the grant program was titled "*Driving* Small Business Forward," FAC Ex. 3, R. 32-3, PageID #279 (emphasis added), signaling defendants' commitment to requiring a demonstrated need for a commercial vehicle and a plan for growth based on that vehicle.

This Court has repeatedly disregarded materially indistinguishable "information and belief" allegations as "contribut[ing] nothing" to the sufficiency of a complaint. *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013); *accord Spencer v. City of Hendersonville*, No. 20-6168, 2021 WL 8016828, at *6 (6th Cir. Oct. 8, 2021) (disregarding "conclusory" allegation "with no supporting detailed factual allegations that demonstrate a reasonable basis for that belief"); *Barner v. Mackie*, No. 17-1608, 2017 WL 5633399, at *3 (6th Cir. Nov. 2, 2017) (same). It should do so again here. Indeed, if anything, this allegation only serves to confirm that Plaintiffs *could not* plausibly allege any facts to support their claim that they satisfied the race-neutral criteria.

"[N]o matter how sincere or deeply committed a plaintiff is to vindicating" an abstract principle, Article III does not allow them to do so absent a concrete personal interest in the outcome. *Carney*, 592 U.S. at 59 (quotation marks omitted). To hold otherwise "would significantly alter the allocation of power at the national level, with a shift away from a democratic form of government." *Id.* (quoting *United States*

*v. Richardson*, 418 U.S. 166, 188 (1974) (Powell, J., concurring)).  Plaintiffs here may well have a sincere objection to the challenged grant program, but they have failed to allege the kind of concrete, personal stake that would give an Article III court jurisdiction to address its lawfulness.  The District Court's order dismissing the case should be affirmed.[9]

## CONCLUSION

For the foregoing reasons, the District Court's order should be affirmed.

Respectfully submitted,

October 18, 2024

/s/ Neal Kumar Katyal
Neal Kumar Katyal
David M. Foster
Reedy C. Swanson
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-8872
neal.katyal@hoganlovells.com

*Counsel for Appellee Circular Board Inc.*

---

[9] The Court may modify the judgment below to clarify that it was without prejudice because the complaint was dismissed for lack of subject-matter jurisdiction.  *See, e.g.*, *Bardes v. Bush*, No. 23-3272, 2023 WL 9318039, at *2-3 (6th Cir. Dec. 4, 2023).

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 7,599 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Sixth Circuit Rule 32(b).

This brief complies with the typeface and typestyle requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft Office 365 in Times New Roman 14-point font.

October 18, 2024                 /s/ Neal Kumar Katyal
                                        Neal Kumar Katyal

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system on October 18, 2024. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Neal Kumar Katyal
Neal Kumar Katyal

**DESGINATION OF RELEVANT LOWER COURT DOCUMENTS**

**Record Excerpts from No. 1:12-cv-01597-PAG (N.D. Ohio):**

| R. | Document Description | Page ID # |
|----|----------------------|-----------|
| 1 | Compl. | 1-7 |
| 15 | Hello Alice Mot. to Dismiss | 112-142 |
| 19 | Progressive Mot. to Dismiss | 159-184 |
| 32 | First Am. Compl. ("FAC") | 262-271 |
| 32-1 | FAC Ex. 1 | 272-275 |
| 32-3 | FAC Ex. 3 | 278-285 |
| 32-4 | FAC Ex. 4 | 286-292 |
| 34 | Progressive Mot. to Dismiss FAC | 326-355 |
| 35 | Hello Alice Mot. to Dismiss FAC | 359-391 |
| 35-1 | Grant Terms | 392-399 |
| 43 | Pls.' Resp. to Defs.' Mots. to Dismiss FAC | 501-536 |
| 51 | Mem. of Op. and Order ("Op.") | 609-625 |
| 53 | Notice of Appeal | 627 |