No. 24-3454

# In the United States Court of Appeals for the Sixth Circuit

———————

NATHAN ROBERTS AND FREEDOM TRUCK DISPATCH LLC, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,

*Plaintiffs-Appellants*,

v.

PROGRESSIVE PREFERRED INSURANCE COMPANY; PROGRESSIVE CASUALTY INSURANCE COMPANY; CIRCULAR BOARD INC., ORIGINALLY NAMED AS CIRCULAR BOARD, LLC

*Defendants-Appellees*.

———————

On Appeal from the United States District Court
for the Northern District of Ohio, Eastern Division
Case No. 1:23-cv-01597-PAG

———————

## APPELLANTS' REPLY BRIEF

———————

JOSEPH P. ASHBROOK
JULIE E. BYRNE
BENJAMIN M. FLOWERS
Ashbrook Byrne Kresge LLC
Post Office Box 8248
Cincinnati, Ohio 45249
(513) 582-7424 (phone)
(513) 216-9882 (fax)
jpashbrook@ashbrookbk.com
jebyrne@ashbrookbk.com
bflowers@ashbrookbk.com

JONATHAN F. MITCHELL
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

GENE P. HAMILTON
NICHOLAS R. BARRY
America First Legal Foundation
611 Pennsylvania Avenue SE #231
Washington, DC 20003
(202) 964-3721 (phone)
gene.hamilton@aflegal.org
nicholas.barry@aflegal.org

*Counsel for Appellants*

# TABLE OF CONTENTS

Table of contents ...........................................................................................i

Table of authorities .....................................................................................ii

    I.    The district court erred by dismissing the plaintiffs' damages claims for failure to allege Article III injury ........................................ 1

    II.    The district court erred by dismissing the plaintiffs' damages claims for failure to allege redressability ........................................... 16

    III.    The district court erred by entering judgment for the defendants after concluding that it lacked subject-matter jurisdiction over the controversy ...................................................... 20

Conclusion ................................................................................................. 21

Certificate of compliance ......................................................................... 22

Certificate of service ................................................................................ 23

## TABLE OF AUTHORITIES

**Cases**

*Advance Sign Group, LLC v. Optec Displays, Inc.*,
   722 F.3d 778 (6th Cir. 2013) ................................................................ 10

*Aiken v. Hackett*, 281 F.3d 516 (6th Cir. 2002) ...................................... 1

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................. 4

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................. 4

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) ................. 12

*Christopher v. Harbury*, 536 U.S. 403 (2002) ............................. 3, 6, 10, 11

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) .................................... 16

*Federal Election Commission v. Ted Cruz for Senate*, 596 U.S. 289 (2022) ..... 7, 8, 9, 17

*Federal Home Loan Mortgage Corp. v. Gilbert*,
   656 F. App'x 45 (6th Cir. 2016) ......................................................... 12

*Frazier v. Navistar Int'l Transp. Corp.*,
   No. 99-CA-89, 2000 WL 426162 (Ohio Ct. App. Apr. 21, 2000) ...................... 12

*Garland v. Orlans, PC*, 999 F.3d 432 (6th Cir. 2021) ............................ 8

*Himmelreich v. Federal Bureau of Prisons*, 766 F.3d 576 (6th Cir. 2014) ................. 20

*In re Nat'l Century Financial Enterprises*,
   377 Fed. Appx. 531 (6th Cir. 2010) ..................................................... 10

*Little Mountain, LLC v. DR Guns, LLC*,
   725 F. Supp. 3d 726 (N.D. Ohio 2024) ............................................... 10

*Manhattan Community Access Corp. v. Halleck*, 587 U.S. 802 (2019) .......... 3, 4, 10, 11

*Owen of Georgia v. Shelby County*, 648 F.2d 1084 (6th Cir. 1981) .......... 14

*Pereida v. Wilkinson*, 592 U.S. 224 (2021) .......................................... 10

*Ramirez v. Collier*, 595 U.S. 411 (2022) ............................................... 2

*Safeco Insurance Co. of America v. City of White House*,
   191 F.3d 675 (6th Cir. 1999) ............................................................. 14

*Seaton v. TripAdvisor LLC*, 728 F.3d 592 (6th Cir. 2013) ......................... 6

*Simon v. Eastern Kentucky Welfare Rights Organization*,
426 U.S. 26 (1976) ................................................................. 17, 18

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ............................... 15

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998) ........................... 18

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) .................... 14

*United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669 (1973) ................................ 14

*Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021) ...................... 19

*Yee v. Escondido,* 503 U.S. 519 (1992) ...................................... 16

**Statutes**

42 U.S.C. § 1981 .......................................................................... 9

**Rules**

Fed. R. Civ. P. 15 ........................................................................ 2

Fed. R. Civ. P. 9(b) ..................................................................... 5

**Other Authorities**

Am. Jur. 2d Contracts § 18 ....................................................... 10

The only issues on this appeal are: (1) Whether the plaintiffs alleged a past injury in fact in their first amended complaint; (2) Whether the plaintiffs alleged redressability when they requested an award of "nominal, compensatory, and punitive damages" as a remedy for their past injuries; (3) Whether the district court erred by entering "judgment" for the defendants after dismissing the plaintiffs' claims for lack of subject-matter jurisdiction. Hello Alice spends much of its brief attacking arguments that the plaintiffs are not making in this appeal. *See, e.g.*, Hello Alice Br., ECF No. 34, at 1 ("Plaintiffs' allegations are riddled with substantial statutory and constitutional problems"); *id.* at 7–8 (criticizing the plaintiffs' original complaint, which has been superseded by the amended complaint); *id.* at 10–11 (attacking the plaintiffs' standing to seek prospective relief, which the plaintiffs are no longer pursuing). Yet neither Hello Alice nor Progressive can overcome the presumption of truth that attaches to the allegations of the first amended complaint, or the reality that the plaintiffs need only to allege and not prove the components of Article III standing at this stage of the proceedings.

## I. The District Court Erred By Dismissing The Plaintiffs' Damages Claims For Failure To Allege Article III Injury

Under *Aiken v. Hackett*, 281 F.3d 516, 519 (6th Cir. 2002), the plaintiffs cannot establish Article III standing for their damages claim unless they would have obtained a sought-after contract in the absence of the defendants' racially exclusionary criteria. Our opening brief and pleadings explain that

there were *two* contracts that the defendants had offered. The first of these contracts was formed at the application stage, in which an applicant would agree to allow Progressive and Hello Alice to use its information for cross-selling and other marketing purposes in exchange for having its application submitted and considered for a $25,000 grant.[1] The second contract would be formed at the selection stage, in which a chosen grant recipient is awarded $25,000 and promises to use that money to purchase a qualifying commercial vehicle.[2] The defendants limited *both* the application-stage and the selection-stage contracts to black-owned businesses.[3]

---

1.    First Amended Complaint ¶ 21, R. 32, Page ID # 266 ("In exchange for being allowed to compete for the grant, applicants agreed to certain terms and conditions that provide benefits to the defendants and involve detriments to the applicants—including terms that allow the defendants to use the applicant's information for cross-selling and other marketing purposes. The terms also give Hello Alice and Progressive a license for their commercial use of the information.").

2.    First Amended Complaint ¶ 22, R. 32, Page ID # 266 ("[B]oth the opportunity to compete for a grant and the awarding of the grant itself involve contracts, supported by mutuality of obligation and consideration.").

3.    Hello Alice seems to think it problematic that the two contracts were explained in the amended complaint and not the original complaint. *See* Hello Alice Br., ECF No. 34, at 8 ("Their original complaint did not include any allegation that the grant program constituted two separate contracts."). But the contents of the original complaint are irrelevant. Litigants are permitted to amend their pleadings, *see* Fed. R. Civ. P. 15, and when they do "the amended complaint supercedes the original, the latter being treated thereafter as non-existent." *Ramirez v. Collier*, 595 U.S. 411, 423 (2022) (citation and internal quotation marks omitted)).

The plaintiffs are not arguing that they would have obtained the second of these two contracts in the absence of the racial exclusions. But they *did* allege, and they are arguing, that they would have obtained the application-stage contract had the defendants not limited this contract to blacks and black-owned businesses.[4] That allegation must be presumed true at the motion-to-dismiss stage, and it is all that is needed to establish standing to seek damages at this stage of the litigation. *See Manhattan Community Access Corp. v. Halleck*, 587 U.S. 802, 806 (2019) ("Because this case comes to us on a motion to dismiss, we accept the allegations in the complaint as true.").[5]

Hello Alice faults the plaintiffs for alleging that they satisfied the non-racial eligibility criteria for the contracts without providing "additional facts explaining why those criteria were satisfied." Hello Alice Br., ECF No. 34, at

---

4. First Amended Complaint ¶ 31, R. 32, Page ID # 267 ("Mr. Roberts's business, Freedom Truck Dispatch, satisfied all of the purported eligibility requirements except for the requirement that the applicant be a black-owned business.").

5. Progressive claims throughout its brief that the plaintiffs must "demonstrate" Article III standing. *See* Progressive Br., ECF No. 32, at 5 ("Plaintiffs had not *demonstrated* that there was any ongoing or imminent risk of future harm" (emphasis added)); *id.* at 8 ("federal courts demand that plaintiffs *demonstrate* standing to sue." (emphasis added)); *id.* at 8 ("The plaintiff has the burden to demonstrate Article III standing."). Although the plaintiffs must eventually demonstrate Article III standing, they need only *allege* standing at this stage of the litigation, and all factual allegations must be construed in the light most favorable to the plaintiffs. *See Christopher v. Harbury*, 536 U.S. 403, 406 (2002) ("Since we are reviewing a ruling on motion to dismiss, we accept Harbury's factual allegations and take them in the light most favorable to her.").

8; *see also id.* at 12 (complaining that the plaintiffs "never alleged *any* facts to support their conclusory assertion that they were eligible for the grant based solely on the race-neutral criteria."); *id.* at 14 (similar); *id.* at 26–32. But allegations in a complaint *must* be assumed true at the motion-to-dismiss stage, regardless of whether they are accompanied by "additional" factual detail, and detailed factual allegations are not required even under *Twombly* and *Iqbal. See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] complaint . . . does not need detailed factual allegations"); *id.* at 570 ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations'"). The amended complaint explicitly states that "Freedom Truck Dispatch . . . satisfied all of the purported eligibility requirements except for the requirement that the applicant be a black-owned business,"[6] and the defendants cannot deny the truth of that allegation at this stage of the proceedings. *See Manhattan Community Access Corp.*, 587 U.S. at 806. None of the factual detail that Hello Alice demands on pages 29–30 of its brief is required,[7] as the plaintiffs are not alleging fraud or mis-

---

6.    First Amended Complaint ¶ 31, R. 32, Page ID # 267.

7.    Hello Alice Br., ECF No. 34, at 29–30 ("They required detailed information about Plaintiffs' business, including the number of employees and annual revenue figures; their 'demonstrated need for' and 'clear plan for growth' based on the commercial vehicle to be purchased using the grant; or even the basic nature of their business.").

take, which must be pleaded with particularity under Fed. R. Civ. P. 9(b), and the rules of civil procedure allow all other factual allegations to be described in general terms. *See, e.g.*, Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

Progressive and Hello Alice also claim that their racial exclusion applied only to the second of these two contracts, and they insist that individuals of any race could have entered into the application-stage contract by completing and submitting an application. *See* Progressive Br., ECF No. 32, at 7 ("[A]nyone could apply for the grant by completing the application, including Plaintiffs."); Hello Alice Br., ECF No. 34, at 11 ("[T]here was no race-related obstacle to Plaintiffs completing the act of submitting an application."); *id.* at 17 ("[S]ubmitting an application would not have been futile for forming this alleged application-stage contract."); *id.* at 23 n.7 ("[T]he Black-owned business requirement applied only to the final grant."). But the plaintiffs have alleged otherwise, and the amended complaint specifically states that the plaintiffs were denied the ability to enter into *both* contracts on account of Mr. Roberts's race:

> Mr. Roberts was injured because he and his business were denied the ability to enter into *contracts* with the defendants—*the contract to compete for the grant money, and the subsequent contract connected to receipt of the grant money*—based on his race.

First Amended Complaint ¶ 32, R. 32, Page ID # 267 (emphasis added).[8] The
defendants cannot dispute the truth of that allegation at this stage of the pro-
ceedings, where all factual allegations in the complaint are presumed true
and construed in a manner most favorable to the plaintiffs. *See Christopher v.
Harbury*, 536 U.S. 403, 406 (2002) ("Since we are reviewing a ruling on mo-
tion to dismiss, we accept [the plaintiff's] factual allegations and take them in
the light most favorable to her."); *see also* Hello Alice Br., ECF No. 34, at 5
n.1 ("Solely for purposes of this appeal arising from a Rule 12(b)(1) motion,
Hello Alice treats the well-pleaded allegations in the complaint as true." (cit-
ing *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012)). And courts are
not permitted to consider factual allegations or evidence that do not appear
in the complaint on a facial Rule 12(b)(1) motion, such as the defendants'
claim that they enforced their racial exclusions only for the selection-stage
contracts and allowed individuals of all races to become parties to the con-
tracts formed at the application stage. *See Seaton v. TripAdvisor LLC*, 728
F.3d 592, 596 (6th Cir. 2013) ("[M]atters outside of the pleadings are not to
be considered by a court in ruling on a . . . motion to dismiss").

---

8.  Progressive's brief falsely asserts that the complaint alleges that "anyone
    could apply for the grant by completing the application" regardless of
    race. Progressive Br., ECF No. 32, at 7; *see also id.* at 6–7 ("By Plaintiffs'
    own allegations, anyone could apply for the grant by completing the ap-
    plication, including Plaintiffs."). No such allegation appears anywhere in
    the first amended complaint. *See* First Amended Complaint, R. 32, Page
    ID # 262–271.

More importantly, even if the complaint had explicitly acknowledged that the defendants excluded non-blacks only from the selection-stage contracts, and even if the complaint had openly conceded that the defendants offered the application-stage contracts to members of all races, the plaintiffs would *still* suffer injury in fact because the selection-stage racial exclusions caused Mr. Roberts to forgo applying and pass up the opportunity to enter into an application-stage contract with Progressive.[9] That Mr. Roberts's choices contributed to the lost application-stage contract does not defeat the existence of Article III injury, nor does it change the fact that Mr. Roberts's choice not to submit the application was "fairly traceable" to the defendants' allegedly unlawful conduct at the selection stage. *See Federal Election Commission v. Ted Cruz for Senate*, 596 U.S. 289, 296–97 (2022) (holding that injuries that a plaintiff "willingly incurred" qualify as injury in fact under Article III); *id.* ("We have never recognized" an "exception to traceability for injuries that a party purposely incurs."). The lost application-stage contract—which Mr. Roberts would have obtained in the absence of the defendants' racial exclusions at the selection stage[10]—constitutes "injury in fact," even if Mr. Rob-

---

9. First Amended Complaint ¶ 28, R. 32, Page ID # 267 ("Eventually, [Mr. Roberts] came to a part of the application that made clear that the grants were available only to black-owned businesses, so he closed the application and did not apply because he is white and his business is white-owned.").

10. First Amended Complaint ¶ 31, R. 32, Page ID # 267 ("Mr. Roberts's business, Freedom Truck Dispatch, satisfied all of the purported eligibility requirements except for the requirement that the applicant be a black-owned business.").

erts contributed to the injury by choosing not to submit his application upon learning of the selection-stage racial exclusions. *See Ted Cruz for Senate*, 596 U.S. at 296–97. And this injury remains "fairly traceable" to allegedly unlawful conduct of Progressive and Hello Alice, because the defendants' racial exclusions at the selection stage caused Mr. Roberts to forgo applying. *See id.*

Hello Alice touts this Court's decision in *Garland v. Orlans, PC*, 999 F.3d 432 (6th Cir. 2021), which declares that "'[s]elf-inflicted injuries fail under [the traceability] prong [of Article III standing] because they are, by definition, not traceable to anyone but the plaintiff.'" Hello Alice Br., ECF No. 34, at 15 (quoting *Garland*, 999 F.3d at 441); *see also id.* at 19 ("To the extent there is a first contract with cognizable benefits independent of the ultimate grant, Plaintiffs' own decision not to apply caused any associated injuries, not any actions of Hello Alice or Progressive."). But that quoted language from *Garland* is no longer good law after *Ted Cruz for Senate*, which rejects the self-inflicted injury doctrine and specifically disavows the idea that self-inflicted injuries fail Article III's traceability requirement. *See Ted Cruz for Senate*, 596 U.S. at 296–97 ("We have never recognized" an "exception to traceability for injuries that a party purposely incurs."). As long as the defendants' conduct *contributed* to Mr. Roberts's decision to forgo applying—and there is no dispute that it did—then the injuries from the lost application-stage contract are "fairly traceable" to the racial exclusions that the defendants enforced at the selection stage, which led Mr. Roberts to close the application and halt the application process. *See First Amended Complaint*

¶ 28, R. 32, Page ID # 267 ("Eventually, [Mr. Roberts] came to a part of the application that made clear that the grants were available only to black-owned businesses, so he closed the application and did not apply because he is white and his business is white-owned.").

If the defendants can eventually establish that they allowed members of all races to enter into contracts at the application stage, as they insist throughout their briefs,[11] then they can use that to argue against the plaintiffs' 42 U.S.C. § 1981 claim *on the merits*, at least with respect to the application-stage contract. But this appeal is unconcerned with merits, as the district court dismissed the complaint only on Article III standing grounds. And the defendants cannot invoke a merits defense when the only issue on appeal is whether the plaintiffs have alleged Article III standing. *See Ted Cruz for Senate*, 596 U.S. at 298 ("For standing purposes, we accept as valid the merits of appellees' legal claims").

The defendants also try to deny the existence of a separate application-stage contract. *See* Progressive Br., ECF No. 32, at 12 ("Plaintiffs characterize the Grant Program as involving 'two contracts': (i) the grant application; and (ii) the grant itself. That distinction is contrived and illusory." (citation omitted)); Hello Alice Br., ECF No. 34, at 12 ("[T]here is no 'application-stage' contract."); *id*. at 19 (similar). But the defendants cannot deny the *truth* of the plaintiffs' factual allegations at this stage of the proceeding. *See*

---

11.  *See* Progressive Br., ECF No. 32, at 7 ("[A]nyone could apply for the grant by completing the application, including Plaintiffs.").

*Manhattan Community Access Corp. v. Halleck*, 587 U.S. 802, 806 (2019) ("Because this case comes to us on a motion to dismiss, we accept the allegations in the complaint as true."). Whether Progressive offered and executed separate contracts at the application and selection stages is a question of fact, not law. *See Pereida v. Wilkinson*, 592 U.S. 224, 239 n.6 (2021) (holding that it is "'generally a question of fact for the jury whether or not a contract . . . actually exists.'" (quoting 11 R. Lord, Williston on Contracts § 30:3, pp. 37–39 (4th ed. 2012)); *Advance Sign Group, LLC v. Optec Displays, Inc.*, 722 F.3d 778, 784 (6th Cir. 2013) ("'Whether there has been a manifestation of mutual assent and/or a meeting of the minds is a question of fact to be determined from all the relevant facts and circumstances.'" (quoting *Costner Consulting Co. v. U.S. Bancorp*, 960 N.E.2d 1005, 1010 (Ohio Ct. App. 2011)); *In re Nat'l Century Financial Enterprises*, 377 Fed. Appx. 531, 540 (6th Cir. 2010) (finding that whether "the parties understood or intended" to form one contract or "two separate contracts" is a question of fact to be proven by presentation of "evidence."); *Little Mountain, LLC v. DR Guns, LLC*, 725 F. Supp. 3d 726, 736 (N.D. Ohio 2024) ("Ordinarily, the existence of a contract, including whether there has been a meeting of the minds, is a question for the trier of fact."); Am. Jur. 2d Contracts § 18 ("[T]he existence of a contract is a question of fact."). And this Court must presume the truth of all factual allegations in the complaint and construe all factual inferences in a manner most favorable to the plaintiffs. *See Christopher v. Harbury*, 536 U.S. 403, 406 (2002) ("Since we are reviewing a ruling on motion to dismiss, we accept

10

[the plaintiff's] factual allegations and take them in the light most favorable to her.").

Progressive and Hello Alice never deny that the plaintiffs *alleged* the existence of separate contracts in the amended complaint. Yet the defendants want this Court to disbelieve the allegations of the amended complaint and find that only one contract existed despite the plaintiffs' allegations to the contrary. *See, e.g.*, Progressive Br., ECF No. 32, at 12 (denouncing the plaintiffs' two-contracts claim as "contrived and illusory."). That is impermissible at the motion-to-dismiss stage. *See Manhattan Community Access*, 587 U.S. at 806; *Christopher*, 536 U.S. at 406. The defendants can deny the existence of two contracts after discovery or on motion for summary judgment, but their attempt to deny the factual premise of the plaintiffs' standing argument is premature at this stage of the proceedings.

Hello Alice also complains that the plaintiffs' opening brief "contains *no* citations [of] any legal authority, from any court anywhere, supporting their position" regarding the existence of two separate contracts. Hello Alice Br., ECF No. 34 at 18–19. But one does not need citations to support the presumed truth of a *factual* allegation at the motion-to-dismiss stage. The mere allegation that two contracts existed is all that is needed at this stage of the litigation. *See* First Amended Complaint ¶ 32, R. 32, Page ID # 267. Nor does Hello Alice explain why the alleged application-stage contract fails to qualify as a "contract" given the exchange of promises and mutual consideration provided:

> In exchange for being allowed to compete for the grant, applicants agreed to certain terms and conditions that provide benefits to the defendants and involve detriments to the applicants—including terms that allow the defendants to use the applicant's information for cross-selling and other marketing purposes. The terms also give Hello Alice and Progressive a license for their commercial use of the information.

First Amended Complaint ¶ 21, R. 32, Page ID # 266. Hello Alice does not deny any of this, yet it objects that the plaintiffs "have never cited any contract law precedent . . . finding an application to form a second contract sufficient to be deemed an independent contract on its own." Hello Alice Br., ECF No. 34, at 20. But not every application will create an independent contract, and the defendants' application required applicants to allow Progressive and Hello Alice to use their information for marketing purposes in exchange for the opportunity to compete for one of the $25,000 grants.[12] It is also common for users of online services to enter contracts that allow access to their data in exchange for the right to use the companies' services, and Progressive's application-stage contracts are no different in this regard. *See, e.g.*, *Brown v. Google LLC*, 685 F. Supp. 3d 909, 932 (N.D. Cal. 2023). The

---

12. This feature of the defendants' application is what creates a contract, and it distinguishes the cases cited in Hello Alice's brief holding that a mere application unsupported by consideration and a mutual exchange of promises is not a contract. *See* Hello Alice Br., ECF No. 34, at 21–22 (citing authorities). None of the applications described in *Frazier v. Navistar Int'l Transp. Corp.*, No. 99-CA-89, 2000 WL 426162, at *3-4 (Ohio Ct. App. Apr. 21, 2000), or *Federal Home Loan Mortgage Corp. v. Gilbert*, 656 F. App'x 45, 47 (6th Cir. 2016), involved situations in which the applicants promised to allow someone to use their data for marketing purposes in exchange for the prerogative to apply.

plaintiffs alleged that the opportunity to apply was offered in consideration for access to applicants' data. *See* First Amended Complaint ¶ 21, R. 32, Page ID # 266 ("In exchange for being allowed to compete for the grant, applicants agreed to certain terms and conditions that provide benefits to the defendants and involve detriments to the applicants—including terms that allow the defendants to use the applicant's information for cross-selling and other marketing purposes. The terms also give Hello Alice and Progressive a license for their commercial use of the information."). Those facts, which must be assumed true, create a contract as a matter of law. And the mere *allegation* of an application-stage contract is controlling at this stage of the litigation, regardless of whether application-stage contracts can be found in decisions of other courts. The defendants cannot deny the truth of a factual allegation in a complaint, and they cannot contest a factual allegation by demanding that the plaintiffs cite cases with similar facts.[13]

The defendants also claim that the loss of the application-stage contract cannot qualify as Article III injury under *Aiken* because the only contractual benefit that the plaintiffs would have received is the opportunity to compete

---

13. Hello Alice is also wrong to claim that the second contract formed at the selection stage would lack consideration, as the grant recipient must promise to use the $25,000 to buy a qualifying commercial vehicle. *See* Hello Alice Br., ECF No. 34, at 22 ("[T]he supposed 'second contract'—the final grant—would lack any alleged consideration."). That is assuredly a "detriment" to the grant recipients, who must use the $25,000 that they receive for a designated purpose rather than spending the money as they see fit.

for one of the $25,000 grants. *See* Progressive Br., ECF No. 32, at 7 ("Plaintiffs describe the benefit afforded by the application—and which they claim they were denied—as the "opportunity to compete" *for* the grant. That is the very injury this Court held in *Aiken* may support standing to seek *injunctive relief* but is insufficient to support standing to seek *damages*."); *see also id.* at 14; Hello Alice Br., ECF No. 34 at 17–18. But the loss of an *actual contract* qualifies as injury in fact regardless of the quantity or the quality of the consideration that would have been obtained. *See United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n.14 (1973) ("[A]n identifiable trifle is enough for standing" (citation omitted)); *Owen of Georgia v. Shelby County*, 648 F.2d 1084, 1089 (6th Cir. 1981) (holding that an unsuccessful bidder's actual loss of contract gives it "economic interests at stake" sufficient to constitute injury in fact); *Safeco Insurance Co. of America v. City of White House*, 191 F.3d 675, 689 (6th Cir. 1999) ("Appellants have standing. The alleged failure to comply with the regulations . . . did result in the loss of a contract and the institution of a suit."). The defendants argue that a contractual right to compete for a $25,000 grant should be treated no differently from the mere opportunity to compete for that grant. But a contractual entitlement comes with legally enforceable remedies in the event of breach, and losing the ability to sue someone who reneges on a promise constitutes an injury that is both "concrete"[14] and "particularized"[15]—even if

---

14.  *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (an injury is "concrete" when it "has a 'close relationship' to a harm 'traditionally'

the promise consists of nothing more than an opportunity to compete for a grant.

Progressive falsely claims that our argument would give every non-black-owned business in the country standing to sue for damages, even if they never applied or attempted to apply for the application-stage contract. *See* Progressive Br., ECF No. 32, at 14 ("'[I]f Plaintiffs have standing to seek damages here, so would every business across the country that is not black-owned—including businesses (like Freedom Truck Dispatch) who never applied for the grant."). The only businesses that will have standing to sue for damages are those that would have applied in the absence of the defendants' racial exclusions. A business that never would have applied if the grants had been open to members of all races has not suffered any injury that is "fairly traceable" to the defendants' allegedly unlawful conduct (*i.e.*, the racial exclusions that they enforced at the grant-selection stage).

Finally, the defendants' claim that we have "forfeited" our injury-in-fact argument is meritless. *See* Progressive Br., ECF No. 32, at 11; Hello Alice Br., ECF No. 34, at 12 ("Plaintiffs failed to sufficiently develop this argument by failing to explain how their two-contracts theory would support standing."). The amended complaint and our brief opposing the motions to dismiss ex-

---

recognized as providing a basis for a lawsuit in American courts.").

15. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) ("For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992)).

plicitly allege injury in fact arising from the lost ability to enter the application-stage contract. *See* First Amended Complaint ¶ 32, R. 32, Page ID # 267 ("Mr. Roberts was injured because he and his business were denied the ability to enter into contracts with the defendants—*the contract to compete for the grant money*, and the subsequent contract connected to receipt of the grant money—based on his race." (emphasis added)); MTD Opp., R. 43, Page ID # 514–15 ("[B]ut for Roberts's race, he and Freedom Truck Dispatch would have been eligible to enter the Competition Contract"). It does not matter whether our district-court brief cited *Aiken*, and both the complaint and the district-court brief clearly identified the loss of the application-stage contract as an Article III injury. *See Yee v. Escondido,* 503 U.S. 519, 534 (1992) ("Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below.").

## II. The District Court Erred By Dismissing The Plaintiffs' Damages Claims For Failure To Allege Redressability

The plaintiffs alleged redressability simply by requesting nominal, compensatory, and punitive damages, as past injuries can always be redressed with a damages award. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 113 (1983). A plaintiff need not show that he is *entitled* to damages to establish redressability under Article III, as the redressability inquiry assumes the validity of the plaintiffs' claims and asks only whether it is *possible* for a court to

redress the plaintiffs' injuries if it grants the requested relief. *See Ted Cruz for Senate*, 596 U.S. at 298 ("For standing purposes, we accept as valid the merits of appellees' legal claims"); *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38 (1976) ("[T]he relevant inquiry is whether . . . the plaintiff has shown an injury to himself that is likely to be redressed *by a favorable decision*." (emphasis added)). Damages are always capable of redressing past injuries at least in part, regardless of whether the plaintiff can ultimately prove his entitlement to a damages award. The defendants do not dispute any of this.

Progressive does not deny that an award of nominal or punitive damages can redress the plaintiffs' past injuries. *See* Progressive Br., ECF No. 32, at 15. Instead, Progressive falsely claims that the plaintiffs "never address *compensatory* damages—the focus of the district court's redressability holding." *Id.* (emphasis in original). Yet our opening brief specifically addresses compensatory damages and explains that the plaintiffs can pursue compensation for: "(1) The time that Mr. Roberts spent filling out the application before discovering that white-owned businesses were categorically ineligible for the grants; and (2) The value of the lost opportunity to compete for the $25,000 grants." Appellants' Opening Br., ECF No. 26, at 23.

Our opening brief also explained that the district court improperly conflated redressability with the merits because it denied standing after concluding that the plaintiffs would not be *entitled to collect* compensatory damages, rather than asking whether the plaintiffs' alleged injuries are *capable of being*

*redressed* with a damages award. *See id.* ("[T]his is a merits question that should not be considered on Rule 12(b)(1), but the district court gave the wrong answer to a merits question that it should never have reached in the first place."). Progressive commits the same error by complaining that the plaintiffs "cite no authority for the proposition that either is a compensable injury in a case like this." Progressive Br., ECF No. 32, at 15. Whether the alleged injuries are "compensable" under the law is a merits question. Redressability, by contrast, asks only whether the *requested* relief is *capable of redressing* the alleged injuries—regardless of whether the plaintiff is legally entitled to that requested relief. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103 (1998) ("[T]here must be redressability—a likelihood that the *requested* relief will redress the alleged injury." (emphasis added)); *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38 (1976) ("[T]he relevant inquiry is whether . . . the plaintiff has shown an injury to himself that is likely to be redressed *by a favorable decision*." (emphasis added)).

Hello Alice, for its part, appears to concede that a request for nominal damages eliminates redressability objections. *See* Hello Alice Br., ECF No. 34, at 24 ("At most, nominal damages could solve a redressability problem. Plaintiffs' problem, however, is that they have not satisfied the first two elements of standing: a cognizable injury in fact that is traceable to the defendants' conduct."). Yet it complains that the plaintiffs "entirely failed to explain how nominal damages could support their theory of standing below."

*Id.* But this is not something that needs to be "explained." It is patently obvious that nominal damages can redress a past injury,[16] and nominal damages were explicitly requested in the complaint. *See* First Amended Complaint ¶ 51, R. 32, Page ID # 270 ("Mr. Roberts respectfully requests that the court: . . . (d) award nominal, compensatory, and punitive damages against each of the defendants"). Hello Alice also complains that the plaintiffs never presented their arguments for redressability in their district-court briefing,[17] but that is because the defendants never raised *any* objections to redressability in their motions to dismiss. *See* Progressive MTD, R. 34, Page ID # 339–345 (no objections to redressability); Hello Alice MTD, R. 35, Page ID # 373–377 (same). The district court discussed the redressability sua sponte and without briefing on the issue, and a litigant does not "forfeit" an argument by failing to brief an issue that an opposing litigant never even raised.[18]

---

16. *See Uzuegbunam v. Preczewski*, 592 U.S. 279, 282 (2021) ("[A]n award of nominal damages can by itself redress a past injury.").

17. *See* Hello Alice Br., ECF No. 34, at 24 ("[T]he words 'nominal' and 'punitive damages' appear nowhere in their opposition to the motions to dismiss."); *id.* at 26 ("Plaintiffs failed to preserve this argument below").

18. Hello Alice denies that punitive damages can "redress" an Article III injury. *See* Hello Alice Br., ECF No. 34, at 25 ("Punitive damages do not 'redress' an injury at all; they simply inflict punishment on a defendant."). But there is no need for this Court to resolve that issue when it is undisputed that nominal damages are capable of redressing a past Article III injury.

### III. THE DISTRICT COURT ERRED BY ENTERING JUDGMENT FOR THE DEFENDANTS AFTER CONCLUDING THAT IT LACKED SUBJECT-MATTER JURISDICTION OVER THE CONTROVERSY

After dismissing the plaintiffs' claims for lack of subject-matter jurisdiction, the district court issued a separate document declaring that it "hereby enters judgment in favor of all defendants." Judgment Entry, R. 52, Page ID # 626. This was error, as a district court cannot enter "judgment" for a party after dismissing the plaintiffs' claims for lack of Article III standing. *See Himmelreich v. Federal Bureau of Prisons*, 766 F.3d 576, 579 (6th Cir. 2014) ("Put bluntly, in the absence of jurisdiction, the court lacks the power to enter judgment.").

Neither Progressive nor Hello Alice disputes this point. But in footnotes, they propose that this Court "modify the judgment" in response to this error. *See* Progressive Br., ECF No. 32, at 16 n.4; Circular Board Br., ECF No. 34, at 32 n.9. The Court, however, cannot "modify" the judgment if it agrees with the district court's decision to dismiss for lack of Article III standing because *no* judgment can be entered when a court lacks subject-matter jurisdiction. The judgment should be vacated, not modified, and if this Court determines that the plaintiffs lack standing it should remand with instructions to enter a jurisdictional dismissal rather than a judgment.

## CONCLUSION

The judgment of the district court should be reversed, and the case remanded for further proceedings.

Respectfully submitted.

 /s/ Jonathan F. Mitchell

Joseph P. Ashbrook                    Jonathan F. Mitchell
Julie E. Byrne                        Mitchell Law PLLC
Benjamin M. Flowers                   111 Congress Avenue, Suite 400
Ashbrook Byrne Kresge LLC             Austin, Texas 78701
Post Office Box 8248                  (512) 686-3940 (phone)
Cincinnati, Ohio 45249               (512) 686-3941 (fax)
(513) 582-7424 (phone)                jonathan@mitchell.law
(513) 216-9882 (fax)
jpashbrook@ashbrookbk.com             Gene P. Hamilton
jebyrne@ashbrookbk.com                Nicholas R. Barry
bflowers@ashbrookbk.com               America First Legal Foundation
                                      611 Pennsylvania Avenue SE #231
                                      Washington, DC 20003
                                      (202) 964-3721 (phone)
                                      gene.hamilton@aflegal.org
                                      nicholas.barry@aflegal.org


Dated: November 22, 2024              *Counsel for Appellants*

# CERTIFICATE OF COMPLIANCE

with type-volume limitation, typeface requirements,
and type-style requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 5,579 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it uses Equity Text B 14-point type face throughout, and Equity Text B is a proportionally spaced typeface that includes serifs.

                                           /s/ Jonathan F. Mitchell

                                           JONATHAN F. MITCHELL

Dated: November 22, 2024                   *Counsel for Appellants*

## CERTIFICATE OF SERVICE

I certify that on November 22, 2024, this document was electronically filed with the clerk of the court for the U.S. Court of Appeals for the Sixth Circuit and served through CM/ECF upon:

Stephanie Schuster
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 373-6595 (phone)
(202) 739-3001 (fax)
stephanie.schuster@morganlewis.com

Emily Cuneo DeSmedt
Morgan, Lewis & Bockius LLP
502 Carnegie Center
Princeton, New Jersey 08540
(609) 919-6673
(877) 432-9652
emily.desmedt@morganlewis.com

Hanna E. Martin
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, New York 10178
(212) 309-6716
(212) 309-6000
hanna.martin@morganlewis.com

Michael J. Ruttinger
Tucker Ellis LLP
950 Main Avenue, Suite 1100
Cleveland, Ohio 44113
(216) 696-4456 (phone)
(216) 592-5009 (fax)
michael.ruttinger@tuckerellis.com

*Counsel for Appellees Progressive Preferred Insurance Co. and Progressive Casualty Insurance Co.*

Michael N. Ungar
Dolores Garcia
Halden R. Schwallie
Ub Greensfelder LLP
Skylight Office Tower
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113-1406
(216) 583-7000 (phone)
(216) 583-7001 (fax)
mungar@ubglaw.com
dgarcia@ubglaw.com
hschwallie@ubglaw.com

Neal Kumar Katyal
David M. Foster
Reedy C. Swanson
Hogan Lovells US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
(202) 637-5600 (phone)
(202) 637-5910 (fax)
neal.katyal@hoganlovells.com
david.foster@hoganlovells.com
reedy.swanson@hoganlovells.com

*Counsel for Appellee Circular Board Inc*.

 /s/ Jonathan F. Mitchell
Jonathan F. Mitchell
*Counsel for Appellants*

23