**No. 24-3454**
# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| NATHAN ROBERTS; FREEDOM TRUCK DISPATCH, LLC, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, | : : : : : | On Appeal from the United States District Court for the Northern District of Ohio Eastern Division |
| Plaintiffs-Appellants, | : : | District Court Case No. |
| v. | : | 1:23-cv-01597-PAG |
| PROGRESSIVE PREFERRED INSURANCE COMPANY; PROGRESSIVE CASUALTY INSURANCE COMPANY; CIRCULAR BOARD INC., ORIGINALLY NAMED AS CIRCULAR BOARD, LLC, | : : : : : | |
| Defendants-Appellees. | : | |

## BRIEF OF *AMICUS CURIAE* STATE OF OHIO SUPPORTING REHEARING *EN BANC*

DAVE YOST
Ohio Attorney General

MATHURA J. SRIDHARAN*
Ohio Solicitor General
 *Counsel of Record*
ZACHERY P. KELLER
Deputy Solicitor General
30 E. Broad St., 17th Fl.
Columbus, Ohio 43215
614.466.8980
Mathura.Sridharan@OhioAGO.gov

*Counsel for Amicus Curiae*
 *State of Ohio*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...............................................................................ii

STATEMENT OF INTEREST AND SUMMARY OF ARGUMENT ................1

STATEMENT OF FACTS ................................................................................2

ARGUMENT....................................................................................................6

    I.      The panel decision breaks from Supreme Court guidance, as it overstates the allegations needed to plead standing for a discrimination claim. ...............................................................................................7

    II.    If left in place, the panel decision will cause confusion and deprive some experiencing discrimination of their claims. ..................................10

CONCLUSION................................................................................................12

CERTIFICATE OF COMPLIANCE...............................................................13

CERTIFICATE OF SERVICE .......................................................................14

# TABLE OF AUTHORITIES

**Cases**                                                                  **Page(s)**

*Ames v. Ohio Dep't of Youth Servs.*,
    605 U.S. 303 (2025) ................................................................ 2, 11

*Ames v. Ohio Dep't of Youth Servs.*,
    87 F.4th 822 (6th Cir. 2023) ....................................................... 11

*Ames v. Ohio Dep't of Youth Servs.*,
    No. 2:20-cv5935 (S.D. Ohio) ....................................................... 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................... 7

*Carney v. Adams*,
    592 U.S. 53 (2020) .............................................................. 1, 8, 10

*Colorado River Water Conservation Dist. v. United States*,
    424 U. S. 800 (1976) .................................................................... 6

*Heckler v. Mathews*,
    465 U.S. 728 (1984) ..................................................................... 7

*Int'l Bhd. of Teamsters v. United States*,
    431 U.S. 324 (1977) ............................................................ 8, 9, 10

*Johnson v. City of Shelby*,
    574 U.S. 10 (2014) ....................................................................... 9

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ..................................................................... 7

*Northeastern Fla. Chapter of Associated Gen. Contractors of Am. v. City
    of Jacksonville*,
    508 U.S. 656 (1993) ..................................................................... 7

*Rivers v. Roadway Express*,
    511 U.S. 298 (1994) ..................................................................... 7

*Sporhase v. Nebraska*,
458 U.S. 941 (1982) ........................................................................ 8, 10

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) ............................................................................. 6

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ........................................................................... 11

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ............................................................................. 7

*Uzuegbunam v. Preczewski*,
592 U.S. 279 (2021) ............................................................................. 9

## Statutes and Constitutional Provisions

U.S. Const. art. III, §2 ......................................................................... 6

42 U.S.C. §1981 ................................................................................. 1, 2

Ohio Rev. Code Chapter 4112 ............................................................... 1

**STATEMENT OF INTEREST AND SUMMARY OF ARGUMENT**

*Amicus curiae*, the State of Ohio, has a compelling interest in protecting its citizens from racial discrimination. To that end, Ohio law protects against discriminatory practices. *See generally* Ohio Rev. Code Chapter 4112. Federal law also protects Ohioans from discrimination, including discrimination in contracting. *See* 42 U.S.C. §1981. That means Ohioans who have been discriminated against may turn to federal courts for recourse. Ohio thus has a keen interest in ensuring that federal courts remain open to Ohioans alleging discrimination. Any standing doctrine that unduly restricts Ohioans' access to courts also poses a problem for Ohio.

That is where this case comes in. It involves an Ohio citizen, Nathan Roberts, who wanted to apply for a grant to help his business. But, as Roberts began to fill out the grant application, he learned that only those of another race were eligible. Because that rendered Roberts's application pointless, he did not finish applying.

According to a panel of this Court, that common-sense decision was a mistake. The panel held that, because Roberts did not submit an application, he lacked standing to proceed with a discrimination claim. The decision is wrong; standing does not require people facing discriminatory processes to make "futile gesture[s]." *See Carney v. Adams*, 592 U.S. 53, 66 (2020) (quotation omitted). Thus, if left in place, the decision will improperly heighten standing requirements and deprive some

1

discrimination victims—including victims from the Buckeye State—of their claims. The panel decision, moreover, will confuse litigation in this Circuit. In Ohio's recent experience, improperly heightened legal standards end up prolonging and complicating litigation for everyone, even parties that initially benefit. *See Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303 (2025).

For these reasons, Ohio urges the full Court's review.[*]

## STATEMENT OF FACTS

**I.** Nathan Roberts is an Ohio citizen who owns an Ohio trucking business. 1st Am. Compl., R.32, PageID#262–63. He brings a class action based on a claim of race-based discrimination in contracting under §1981. *Id.*, PageID#268–70. Roberts claims that an Ohio insurance company, Progressive, excluded him and others from competing for a grant because of race. *Id.*, PageID#262, 270.

Roberts's case never made it past the pleadings, so here are the alleged facts. A few years ago, Progressive offered a $25,000 grant for small businesses to use toward buying a vehicle. *Id.*, PageID#262, 266. Progressive allegedly divided the grant program into two contractual phases. *Id.*, PageID#262. First, to compete for the grant, small businesses needed to allow the use of their information for marketing. *Id.*

---

[*] Ohio submits this brief under Federal Rule of Appellate Procedure 29(b)(2).

Second, for those ultimately receiving the grant, the program restricted how the money could be used. *Id.*

This grant program had a race-based catch. Only black-owned businesses were eligible to receive the money. *Id.*, PageID#264. Progressive made this requirement clear upfront. For example, application materials informed would-be applicants that they "must meet" five "criteria to be eligible for this opportunity." Ex.3, R.32-3, PageID#281. The very first criterion was that the relevant business be "owned and operated by a Black-identifying entrepreneur(s)." *Id.* Progressive issued a press release similarly announcing that the grant program was "for Black Small Business Owners." Ex.4, R.32-4, PageID#287. And emails to prospective applicants likewise reflected that "each" of the available grants was limited "to Black-owned small businesses." Ex.1, R.32-1, PageID#274. The application itself also signaled that Progressive would award grants only to black-owned businesses. 1st Am. Compl., R.32, PageID#267.

Roberts received an email about the grant program in May 2023. *See id.*, PageID#264. His business satisfied the grant's eligibility criteria that did not relate to race. *Id.*, PageID#267. Roberts is white, however, so his business was ineligible to receive the grant. *Id.* But he wished to apply for the grant. *Id.* Indeed, upon receiving the email, Roberts initially did not understand that the grant was limited to

black-owned businesses. *Id.* So he opened the grant application and began applying. *Id.* But he soon "came to a part of the application that made clear that the grants were available only to black-owned businesses." *Id.* Because that rendered Roberts's business ineligible, Roberts did not finish applying. *Id.*

Roberts and his company filed this lawsuit a few months later. Roberts sought both damages (nominal, compensatory, and punitive) and prospective relief. *Id.*, PageID#270. Progressive, however, has since disclaimed plans to offer comparable grants in the future. So Roberts now seeks only damages. Pet.5 n.18.

**II.** The district court dismissed this case on the pleadings for lack of standing. A divided panel of this Court affirmed. The panel concluded that Roberts's injuries were "self-inflicted" because "he chose not to submit an application for a grant." Panel Op.8.

To reach that conclusion, the panel zoomed in on the alleged dual-contract structure of the grant program. The panel emphasized that Progressive divided the program into an initial application stage (where Progressive received applications) and a later grant stage (where Progressive awarded the grant to someone). *See id.* at 6–7. The panel appreciated that had Roberts completed an application, "he may have been subjected to racial discrimination." *Id.* at 7–8. But it reasoned that because the grant program's "race-based barrier" did not kick in until the later stage, Roberts

should have completed an application and subjected himself to the program's "race-based criteria." *Id.* at 10. The panel thus viewed Roberts's injuries as being "of his own volition." *Id.* It followed, according to the panel, that Roberts had not sufficiently pled causation for standing. *Id.* at 11.

Judge Boggs dissented. *Id.* at 13–26. He emphasized that injury in a contract-discrimination case is *not* limited to the ability to submit a form. *Id.* at 14. Rather, injury in such cases includes being placed on "unequal footing in any aspect of the sought-after contractual relationship." *Id.* In Judge Boggs's view, that meant that Roberts had alleged an injury even accepting the "two-contract framing" of the complaint. *Id.*; *see also id.* at 19. Even at the first stage of the alleged process, Judge Boggs explained, an applicant's "very purpose" was the "opportunity to compete" for the ultimate grant. *Id.* at 14. And because the grant was "race-restricted," it was obvious from the start that Roberts did not have an equal opportunity to compete. *Id.* The allegations thus presented "a clear-cut instance of unequal footing," given that "no one would compete for a prize reserved for someone else's race." *Id.* at 20.

Judge Boggs also disagreed with the majority's approach to the pleadings. *Id.* at 23–24. At the pleading stage, Judge Boggs emphasized, courts are not supposed to scrutinize a plaintiff's initial legal theory for imperfections. *Id.* at 23. He thus faulted the majority for becoming entangled in Roberts's "two-contract legal theory" and

missing the more "obvious and salient point" that Roberts had alleged enough facts to "make standing plausible." *Id.*

## ARGUMENT

Standing involves competing judicial duties. On the one hand, because standing is jurisdictional, federal courts have "an independent obligation to assure that standing exists." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). By ensuring standing, courts limit themselves to resolving "Cases" or "Controversies." *See* U.S. Const. art. III, §2. On the other hand, when standing and other jurisdictional requirements are met, federal courts have a "virtually unflagging obligation" to exercise their jurisdiction. *Colorado River Water Conservation Dist. v. United States*, 424 U. S. 800, 817 (1976). That obligation prevents courts from limiting themselves to only the cases they wish to hear.

This case presents an exceptionally important question about when federal courts are obligated to let discrimination claims proceed. The panel in this case held that, to have standing, Roberts needed to go through the motions of submitting a futile application. That is wrong. Crediting Roberts's allegations, the grant program at issue excluded him because of his race. Because that exclusion was clear from the outset, Roberts did not need to submit a futile application for standing purposes, regardless of how the process was layered. The panel decision, if left in place, will

confuse litigants and courts within this Circuit. Worse, it will deprive some with viable discrimination claims of their day in court. To further unpack these points, Ohio begins with where the panel went wrong and then turns to the implications.

## I. The panel decision breaks from Supreme Court guidance, as it overstates the allegations needed to plead standing for a discrimination claim.

To establish standing, a plaintiff must show an injury that the defendant's conduct caused and that judicial relief could redress. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). A complaint, it follows, must allege enough facts to make these components of standing plausible. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Beyond these basics, two points about discrimination standing prove critical here.

*First*, "discrimination itself" is an injury sufficient to confer "standing" on those "personally denied equal treatment." *Heckler v. Mathews*, 465 U.S. 728, 739–40 (1984). For those competing for a contract benefit, "the inability to compete on an equal footing" during the process qualifies as an "injury in fact" for standing purposes. *Northeastern Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993). Thus, people are injured when they suffer unequal treatment during any aspect of contracting. *See Rivers v. Roadway Express*, 511 U.S. 298, 302 (1994) (noting that §1981 prohibits discrimination in "all phases and incidents of the contractual relationship").

*Second*, if a competitive process has facially discriminatory terms, standing does not demand that an excluded plaintiff go through the "futile gesture" of an application. *See Carney*, 592 U.S. at 66 (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365–66 (1977)). In other words, if a plaintiff "would not have been granted" a benefit because of a challenged requirement, a "failure to submit an application … does not deprive" the plaintiff "of standing to challenge" the requirement. *Sporhase v. Nebraska*, 458 U.S. 941, 944 n.2 (1982). That makes sense. While a "discriminatory policy" certainly harms those "expressly denied" an opportunity, it *also harms* those deterred from applying in the first place—those "unwilling to subject themselves to the humiliation of explicit and certain rejection." *Int'l Bhd. of Teamsters*, 431 U.S. at 365. Standing doctrine accounts for this: plaintiffs facing such scenarios need not submit futile applications, they must merely show that "they were able and ready to apply." *Carney*, 592 U.S. at 65–66 (quotation omitted).

These principles should have made light work of standing in this case. Roberts alleged facts demonstrating an injury. He alleged that he was ready and willing to compete for the relevant grant, but that he was excluded from competing because of race. *See* 1st Am. Compl., R.32, PageID#262, 264–67, 270. Roberts also alleged facts demonstrating causation. Most obviously, Progressive set the terms of its grant program. *Id.*, PageID#269. But Progressive also advertised to the world—through the

application itself and surrounding materials—that only black-owned businesses were eligible. *Above* 3. Progressive thus deterred others from applying. Finally, judicial relief could redress the alleged injury. While Roberts seeks several forms of damages, at the very least nominal damages would be available if Roberts were to prevail. *See Uzuegbunam v. Preczewski*, 592 U.S. 279, 292 (2021).

The panel greatly overcomplicated the analysis. As Judge Boggs observed, the panel seemed to apply a "heightened pleading standard." Panel Op.26 (Boggs, J., dissenting). When courts evaluate the pleadings, they are supposed to consider the alleged facts; they are not supposed to dissect a plaintiff's initial legal theory. *See Johnson v. City of Shelby*, 574 U.S. 10, 11–12 (2014) (*per curiam*). Even so, the panel became fixated on Roberts's two-contract theory. That mistaken focus ultimately distracted the panel from the alleged facts. The panel's characterization of Roberts's injury as "self-inflicted" is especially problematic in this regard. Panel Op.8. Again, the allegations are that *Progressive* limited its program to black-owned business and then broadcast that limit to the world. *See above* 3. Progressive cannot now restrict those harmed by its policy "to the few who ignored" the message. *See Int'l Bhd. of Teamsters*, 431 U.S. at 365.

**II.    If left in place, the panel decision will cause confusion and deprive some experiencing discrimination of their claims.**

Consider the consequences of leaving the panel decision in place. Defendants throughout this Circuit will no doubt seize on the panel's logic to claim "self-inflicted injury" as a standing defense to discrimination claims. Although the panel decision's exact boundaries are hard to make out (the logic is arguably quite broad), the decision undoubtedly imposes a futile-application requirement for at least some subset of plaintiffs alleging discrimination. *Contra Carney*, 592 U.S. at 66; *Sporhase*, 458 U.S. at 944 n.2. The decision, moreover, incentivizes sophisticated actors to structure their programs in a way that "launder[s]" racial preferences "through a series of sham, nominally race-neutral stages." Panel Op.26 (Boggs, J., dissenting). These features of the panel decision will confuse discrimination litigation in this Circuit. More troubling, the panel decision (and decisions following it) will dissuade some victims of discrimination—those "unwilling to subject themselves" to a facially discriminatory process, *see Int'l Bhd. of Teamsters*, 431 U.S. at 365—from pressing viable legal claims based on a supposed lack of standing. The Court should fix this problem now through full review.

As mentioned above, Ohio submits this brief to protect its citizens. But Ohio officials also frequently litigate in this Circuit, often as defendants. That perhaps makes Ohio's position more notable. After all, as litigants, Ohio officials might

10

benefit in the short run from overly defense-friendly precedent within this Circuit. But, in Ohio's experience, such "benefits" do not last. Rather, victories wrongly earned during early stages of litigation often end up prolonging and confusing litigation. *See Ames*, 605 U.S. 303; *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014).

In this sense, the panel decision calls to mind Ohio's recent experience in *Ames*. There, a heterosexual woman (Ames) brought claims of employment discrimination against an Ohio agency because a lesbian woman received the position she wanted. *Ames*, 605 U.S. at 306. Ohio won summary judgment at the trial level, and this Court affirmed. But this Court applied a flawed circuit doctrine to reach its decision. Specifically, this Court said that because Ames was a member of a majority group (heterosexuals) she needed to make an extra "showing in addition to the usual ones" to prove her discrimination claim. *Ames v. Ohio Dep't of Youth Servs.*, 87 F.4th 822, 825 (6th Cir. 2023). That extra-showing approach caught the Supreme Court's attention, and it granted *certiorari*. Before the Supreme Court, Ohio argued that this Circuit's flawed approach did "not make a difference" to the outcome of the case. Brief in Opp'n 1 (May 31, 2024), No. 23-1039 (U.S.). But the Supreme Court, understandably, felt the need to fix this Circuit's mistaken rule imposing "a heightened evidentiary standard." *Ames*, 605 U.S. at 313. As a result, the matter remains in litigation today. *See Ames v. Ohio Dep't of Youth Servs.*, No. 2:20-cv5935 (S.D. Ohio).

For present purposes, here is the takeaway from *Ames*. Improperly onerous legal standards can end up overcomplicating litigation for everyone in the long run. Here, the panel's approach to pleading discrimination injury is too demanding. The full Court should fix the problem before it festers.

## CONCLUSION

For these reasons, Ohio urges the Court to grant the petition.

Respectfully submitted,

DAVE YOST
Attorney General of Ohio

*/s/ Mathura J. Sridharan*
MATHURA J. SRIDHARAN*
Ohio Solicitor General
 *Counsel of Record*
ZACHERY P. KELLER
Deputy Solicitor General
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
614.466.8980
Mathura.Sridharan@OhioAGO.gov

*Counsel for Amicus Curiae*
 *State of Ohio*

**CERTIFICATE OF COMPLIANCE**

I hereby certify, in accordance with Rule 32(g) of the Federal Rules of Appellate Procedure, this brief complies with the type-volume requirements for a principal brief and contains 2,579 words. *See* Fed. R. App. P. 29(b)(4).

I further certify that this brief complies with the typeface requirements of Federal Rule 32(a)(5) and the type-style requirements of Federal Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Equity font.

*/s/ Mathura J. Sridharan*
MATHURA J. SRIDHARAN

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2026, this brief was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Mathura J. Sridharan*
MATHURA J. SRIDHARAN